SEXTON, Judge.
The defendant appeals his conviction in a bench trial of the offense of burglary of an inhabited dwelling and his subsequent sentence to three years at hard labor, one of which is to be served without benefit of parole, probation or suspension of sentence. The defendant argues ten of his eleven perfected assignments of error which present four basic contentions. We affirm.

Context Facts

On April 9, 1984, a burglary was committed at the residence of Patricia Fong in Shreveport, Louisiana. A safe containing various articles of jewelry, numerous gold and rare coins, and a gun were stolen from the residence. The value of the items stolen is unclear. Although Ms. Fong claimed that the contents of the safe were worth $21,000, she testified that she received insurance proceeds in the amount of $962. None of the stolen items were recovered.
The burglary was reported by Ms. Betty Deaton, a neighbor of Ms. Fong’s, and the defendant’s sister-in-law. Mrs. Deaton contacted the police after she observed two people come from the back of a truck parked at the Fong’s house, enter the truck and drive off. As a result of a police investigation, the defendant was arrested several weeks later.

Assignment Nos. 1, 2, ⅛ and 6 Ineffective Assistance of Counsel

In these assignments the defendant complains of certain actions or omissions of trial counsel. Assignment No. 1 complains of error by the trial court in allowing defense counsel to waive a preliminary examination. Assignment No. 2 complains of trial court error in allowing the defendant to waive his right to trial by jury. Assignment No. 4 complains that the trial court erred in allowing counsel to waive closing argument. Assignment No. 6 complains that the trial court erred in permitting the defendant to proceed with inadequate representation of counsel.
The most important issue in this category is presented by Assignment No. 6 which urges that the totality of the actions of counsel for defendant resulted in ineffective assistance of counsel.
In State v. Berry, 430 So.2d 1005 (La.1983), the Louisiana Supreme Court essentially anticipated Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), which held that the standard of review to determine effectiveness of counsel is that of “reasonably effective assistance.” This jurisprudence holds that in order to support a claim of ineffective assistance, a defendant must show that counsel’s performance was deficient and that the deficient performance prejudiced the defense to the extent that the defendant as a result was deprived of a fair trial — i.e., a trial with a reliable result.
Claims of ineffective assistance of counsel as a general rule are more properly raised by application for writ of habeas corpus in the trial court where a full evi-dentiary hearing may be conducted. State ex rel. Bailey v. City of West Monroe, 418 So.2d 570 (La.1982); State v. Prestridge, 399 So.2d 564 (La.1981). Only where the record discloses sufficient evidence to de *1136 cide the issue of ineffective assistance when raised by assignment of error should the issue be addressed on appeal. State v. Seiss, 428 So.2d 444 (La.1983).
Based on the record before us, we are unable to make a determination of whether the totality of trial counsel’s representation of the defendant amounted to a lack of “reasonably effective assistance.” Noting that the defendant may pursue this claim in an application for post conviction relief where the opportunity for a full evidentiary hearing is available, we find no merit to this assignment of error.
The other assignments in this category dealing with specific actions of counsel likewise do not avail the defendant. The defendant’s contention concerning waiver of a preliminary examination through counsel is without merit. The defendant cites no prejudice resulting therefrom and his conviction renders any arguable complaint moot.
A review of the record clearly demonstrates that the defendant made a knowing and intelligent waiver of his right to trial by jury. The trial court meticulously questioned the defendant individually concerning his desire to waive this right. The defendant responded that he knew and understood the effects of his waiver. This assignment is without merit.
The assignment contending the trial court erred in allowing defense counsel to waive closing argument is also without merit. In a case such as this before a jurist alone, we are unable to discern error in the waiver itself and the defendant points to no specific prejudice resulting therefrom.

Assignment No. 5 Questions by the Trial Court

By this assignment the defendant urges that the trial court erred by questioning a witness beyond the scope of the examination conducted by the prosecution or the defense. However, in a bench trial the judge has the right to question witnesses to clarify evidence provided the judge does not participate in the trial to such an extent as to deprive the defendant of a fair trial. State v. Layssard, 310 So.2d 107 (La.1975). We find the trial court’s participation was minimal and was intended to clarify confusing testimony. We are not persuaded that the interrogation was as extensive as characterized by the defense, nor has any specific prejudice in this regard been shown. This assignment of error is without merit.

Assignment Nos. 3 and 8

Sufficiency of the Evidence

Assignment of Error Nos. 3 and 8 test the sufficiency of the evidence upon which the defendant was convicted. In order to satisfy due process standards, the record evidence when viewed in the light most favorable to the prosecution must be sufficient for the factfinder to conclude that the essential elements of the crime were proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).
While it is clear that the defendant was to some extent involved in the burglary of the Fong residence, a careful review of the evidence is necessary to determine his actual role.
Initially it should be noted that the victim testified that she and her son knew the defendant and that the defendant had been in her house on various occasions. Additionally, Mrs. Deaton, the neighbor who reported the burglary, testified that she could not identify any of the perpetrators and did not recognize her brother-in-law as being among the persons she saw at the Fong residence the night of the burglary.
The defendant and his three former co-defendants all testified during the trial. The first of these to testify was the former co-defendant, Mark Jordan.[1] He testified that he went to the residence of the defend *1137 ant with his father, former co-defendant Michael Jordan, on the day of the burglary. Also present at that time in addition to the defendant was Sal Santano and “Shirley somebody.” He stated that he went to the Fong residence with his father and Sal Santano after a conversation at the Deaton residence involving a safe. He stated he was not aware of the details of the conversation because in addition to “not really paying any attention” he was “just so drunk and stoned and everything.” He specifically testified that the defendant was not at the Fong premises at the time the residence was entered.
Co-defendant Sal Santano[2] testified that Ronald Fong, Ms. Fong’s son, had planned the burglary. He testified that he was living at Deaton’s house at the time of the burglary in question and was asleep on Deaton’s sofa when Deaton woke him up and told him to proceed to the Fong residence to “do some work.” He testified that Deaton told him he had opened the door to the Fong residence and had been seen in the process by his sister-in-law, Betty Deaton, whom he had ordered back inside her residence. He stated Deaton told him that he had left the door open. He further testified that at the time he and the others went to the Fong residence that the defendant Deaton was passed out from intoxication at his residence. He stated the safe was taken from the city and broken open. The value of the contents were significantly less than expected and he specifically testified that defendant Deaton received none of the swag.
Co-defendant Michael Jordan[3] testified that the defendant told him about the safe in the Fong’s residence, and that at his request the defendant accompanied him and his son, Mark Jordan, to the Fong residence to see where it was located. He stated that once at the residence he cut the screen and kicked open the door. He related that Deaton remained outside and began yelling at him saying that he “was too drunk to get involved.” He testified that at this point he and his son took the defendant back to his residence. He further testified that once at the defendant’s residence the defendant solicited the aid of Sal Santa-no, the defendant’s roommate, and that Santano, his son and himself returned to the Fong residence and committed the burglary and theft. He stated that he was going to burn the house down but decided against it. Jordan further testified that the three of them carried the safe to his house, and opened it, but that Santano stole most of the contents while he was on the phone. Jordan also testified that the defendant received nothing.
During his testimony the defendant essentially denied involvement in this offense. He stated that he had no knowledge of the safe, that Santano, Michael and Mark Jordan were at his house on the day of the burglary, but that he passed out after returning from the liquor store at about 6:00 o’clock and slept all night. He stated that he heard about the burglary the following day from Ronald Fong and that the co-defendants subsequently all admitted to him their involvement in the burglary and theft.
While the testimony of the three co-defendants is somewhat contradictory concerning the involvement of the defendant in this offense, that testimony when viewed in the light most favorable to the prosecution shows that the defendant informed Sal San-tano that he had opened the door to the Fong residence and that the defendant requested that Santano proceed there to accomplish this burglary. While Michael Jordan testified he opened the door to the Fong residence, his testimony indicates that the defendant accompanied him to that residence and assisted in planning the offense. The defendant’s involvement in planning the offense is corroborated even by the scant testimony of Mark Jordan.
*1138 It is obvious that the three co-defendants who testified for the state were attempting to minimize the involvement of the defendant. In reviewing the record, one is emphatically impressed that the co-defendants were not only trying to conceal a deeper involvement of the defendant than that to which they testified but also that these co-defendants felt that the fashion of their testimony exonerated the defendant from this offense. However, their testimony, while contradictory to some extent, when viewed in the light most favorable to the prosecution as mandated by Jackson v. Virginia, supra, shows that this defendant was “concerned in the commission” of this offense. Even though absent under the version of these witnesses, he aided and abetted in its commission and is therefore a principal. LSA-R.S. 14:24.[4]
The defendant also argues that the state failed to prove the specific intent element of the crime charged beyond a reasonable doubt. The specific intent required does not have to be proven as fact but may be inferred from the circumstances and actions of the defendant. State v. Boyer, 406 So.2d 143 (La.1981). Accordingly, the required intent can be implied from the defendant’s active participation in the commission of this crime. The testimony of the former co-defendants is replete with circumstances sufficient to show the necessary intent.
These assignments of error lack merit.

Assignment Nos. 9, 10 & 11

Sentencing Errors and Bail

By these assignments of error, the defendant urges that the trial court erred in imposing an unconstitutionally excessive sentence, in failing to comply with the requirements of LSA-C.Cr.P. Art. 894.1, and in imposing excessive bail.
Before sentencing the defendant, the trial court initially ordered a pre-sentence investigation. However, because the probation officer was unable to contact the defendant, the court amended the order to request a limited pre-sentence investigation. That investigation reflected that the defendant was convicted of a Dyer Act violation in Muskogee, Oklahoma in 1949. He received probation which he was adjudged to have violated in 1951. He was also convicted of bigamy in 1971 in Franklin, Louisiana, and simple damage against property in Shreveport in 1974. The report also reflected the following charges against the defendant which were dismissed: (a) 1958, auto theft, Tallulah, Alabama; (b) 1965, larceny, Little Rock, Arkansas; (c) 1970, simple burglary, Gretna, Louisiana; (d) 1972, possession of a stolen car, New Orleans, Louisiana; (e) 1977, possession of burglary tools, Shreveport, Louisiana; and (f) 1983, felony theft, Shreveport, Louisiana.
In articulating the sentence, rather than discussing the defendant’s entire record as reflected by the pre-sentence investigation, the trial judge filed the aforesaid record and noted as part of his extensive compliance with Article 894.1 that the instant offense appeared to be the defendant’s second felony conviction. The trial court emphasized that the defendant's sentence was based entirely on the record before it of the instant offense and discussed the following factors in articulating sentence: the defendant’s criminal conduct caused serious harm in that none of the items stolen from Mrs. Fong’s residence were recovered; the defendant contemplated that his criminal conduct would cause serious harm; the defendant did not act under strong provocation; that although there was some evidence suggesting that the defendant was intoxicated, there did not exist substantial grounds tending to excuse or justify the defendant’s criminal conduct; the defendant had not and would not compensate the victim of his *1139 criminal conduct as he denied any involvement in the offense; the defendant has an extensive record of prior delinquency and criminal activity; the character and attitude of the defendant indicate that he is likely to commit another crime; and the defendant is not particularly likely to respond affirmatively to probationary treatment. Additionally, the court found an undue risk that during the period of suspended sentence or probation, the defendant would commit another crime. We note that the defendant is a second felony offender and ineligible for probation.
It is well-settled that the sentencing judge is given wide discretion in imposing a sentence within the statutory limits and such a sentence should not be set aside as excessive in the absence of a manifest abuse of discretion by the sentencing judge. State v. Square, 433 So.2d 104 (La.1983); State v. Brooks, 431 So.2d 865 (La.App.2d Cir.1983); State v. Hammonds, 434 So.2d 452 (La.App.2d Cir.1983), writ denied 439 So.2d 1074 (La.1983).
The sentencing guidelines of LSA-C.Cr.P. Art. 894.1 provide the criteria to consider in determining whether a sentence is excessive. State v. Sepulvado, 367 So.2d 762 (La.1979); State v. Tully, 430 So.2d 124 (La.App.2d Cir.1983), writ denied, 435 So.2d 438 (La.1983). While the trial judge need not articulate every aggravating and mitigating circumstance outlined in Art. 894.1, the record must reflect that he adequately considered these guidelines in particularizing the sentence to the defendant. State v. Smith, 433 So.2d 688 (La.1983); State v. Hammonds, supra; State v. Cunningham, 431 So.2d 854 (La.App.2d Cir.1983), writ denied, 438 So.2d 1112 (La.1983).
A sentence is constitutionally excessive in violation of Louisiana Constitution of 1974 Art. 1, § 20 if the sentence is grossly out of proportion to the severity of the offense or nothing more than a needless and purposeless imposition of pain and suffering. State v. Bonanno, 384 So.2d 355 (La.1980); State v. Cunningham, supra.
We conclude that the considerations taken into account by the trial judge are well set forth and provide an adequate basis for the sentence imposed. Accordingly, we determine that the sentence is sufficiently articulated as required by LSA-C.C.P. Art. 894.1 and it is not constitutionally excessive.
In conclusion, the defendant argues that he was admitted to excessive bail. It appears that prior to trial defendant’s bail was set at $50,000 and reduced thereafter to $10,000. Defendant’s brief concedes that defendant met this bond and remained free on bail after conviction and during this appeal. The defendant nevertheless argues that this bail is excessive. As we appreciate it, the primary basis for this argument is that defendant regularly appeared when required and therefore the bail is excessive.
Regardless of the logical infirmities inherent in this argument, this assignment is moot not only because the defendant met the bail imposed without contemporaneous objection but because of our affirmance of his conviction.
The defendant’s conviction and sentence are affirmed.
AFFIRMED.

. Jordan pled guilty to another burglary and as a result of the plea agreement, the Fong burglary charge was dismissed with the understanding that he would testify truthfully with respect thereto.

. The record does not reflect the status of Santa-no as to this charge other than that the defendant was severed from Mr. Santano by virtue of his election to waive trial by jury.

. This co-defendant testified that he had pled guilty to felony theft regarding the theft of the safe from the Fong residence.

. This jurisdiction defines principals as "All persons concerned in the commission of a crime, whether present or absent, and whether they directly commit the act constituting the offense, aid and abet in its commission, or directly or indirectly counsel or procure another to commit the crime, are principals."