490 So.2d 616 (1986)
STATE of Louisiana, Appellee,
v.
Terry JAMES and Tommy Washington, Appellants.
No. 17817-KA.
Court of Appeal of Louisiana, Second Circuit.
June 11, 1986.
*617 Indigent Defender Bd., Bienville Parish by David M. Newell, Homer, J. Keith Mullins, P.C., Ruston, for appellants.
*618 John C. Blake, Dist. Atty. by H. Russell Davis, Asst. Dist. Atty., Arcadia, for appellee.
Before FRED W. JONES, SEXTON and LINDSAY, JJ.
FRED W. JONES, Judge.
The defendants, James and Washington, were jointly charged with two counts of armed robbery. After a jury trial each defendant was convicted of two counts of simple robbery (La.R.S. 14:65). The defendants were subsequently adjudged habitual offenders (La.R.S. 15:529.1) and sentenced to serve 14 years in prison on each count of which convicted, with the sentences to run consecutively.
Each defendant appealed, with Washington reserving five assignments of error and James reserving four. James' assignments, although not in the same numerical order, dealt with the same issues as four of Washington's assignments. Therefore, for purposes of discussion these assignments are treated together, followed by a disposition of Washington's fifth assignment.
Context Facts
On July 6, 1984, at approximately 10:30 p.m., two black males made an unauthorized entry into the residence of Mr. and Mrs. Odell Walker located in Taylor, Bienville Parish, Louisiana. One of the men held the Walkers at gunpoint while the other searched their home for cash and jewelry. Between $200 and $300 in cash, several pieces of jewelry (collected in a pink flowered pillow case) and the Walker's car were stolen. The vehicle was subsequently recovered a short distance away.
The next day a police informant, Champion, notified sheriff's deputies he had been contacted by James who offered to sell him some jewelry, but that Champion had refused due to lack of money. Deputies provided the cash and told Champion to make the purchase.
The next morning Champion, with the aid of two others (Kemp and Harris), located James and the four traveled to a motel where both Champion and James talked to Washington via telephone. Washington came to the motel and conferred outside with James. No sale was made that day, but James sought out Champion several days later and again offered some jewelry which Champion purchased. Champion saw that the jewelry was in a pink flowered pillow case, but he was not given the pillow case. James made a second sale to a man named Williams and that jewelry was also turned over to authorities. The Walkers subsequently identified it as belonging to them.
James and Washington were then arrested. While incarcerated both made inculpatory statements to several inmates of the Bienville Parish jail.

Severance

JAMES' ASSIGNMENT OF ERROR NO. 1

WASHINGTON'S ASSIGNMENT OF ERROR NO. 3
Both defendants claim the trial court erred in not severing their trials. Neither defendant requested severance. It is well-settled that the failure of a defendant to timely move for a severance constitutes a waiver of any right that he may have to be tried separately. State v. Jones, 408 So.2d 1285 (La.1982). See also La.C.Cr.P. Article 704, "Jointly indicted defendants shall be tried jointly unless: ... the court, on motion of the defendant, and after contradictory hearing with the district attorney, is satisfied that justice requires a severance." (emphasis added)
Defendants show no prejudice as a result of joint trials. They did not have antagonistic defenses. Indeed, the basic defense theory was mistaken identity. We find no merit in these assignments of error.

Sufficiency of Evidence

JAMES' ASSIGNMENT OF ERROR NO. 2

WASHINGTON'S ASSIGNMENT OF ERROR NO. 1
Both defendants argue the evidence presented was insufficient to support their *619 conviction. On the contrary, we find that when the evidence is viewed in the light most favorable to the prosecution, a rational factfinder could have found proof beyond a reasonable doubt of each element of the crime. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).
Simple robbery is "the taking of anything of value belonging to another from the person of another or that is in the immediate control of another, by use of force or intimidation, but not armed with a dangerous weapon."
No evidence was presented directly placing either defendant at the Walker residence on the night of the incident. Defendants emphasized the Walkers could not identify them and the physical descriptions given differed from the defendants in several respects.
The Walkers testified both robbers were black males dressed in black with their faces almost completely covered, one was taller than the other, they were both young and neither had a speech impediment, but one did speak haltingly. Finally, they testified one called the other "John" but it was making fun when he said it, as though "John" was not the real name. Evidence revealed the defendants are actually within one-half inch of each other in height, are in their early twenties and Washington usually has a stutter. Evidence also revealed the Walkers were both in their late 70's at the time of the crime and were extremely agitated. In addition, Mr. Walker was made to stay on the bed throughout the robbery and was thus at a disadvantage in judging heights. Mrs. Walker testified, "I was so terrified I'm not sure that I was thinking about height and weight." She also stated she was afraid to look at the robbers. Testimony regarding Washington's stutter ranged from "always" to "never" to "it could be controlled if he spoke deliberately". The Walkers testified one of the men did speak deliberately. In any event, the evidence against the defendants consists of much more than the testimony of the Walkers.
The police informant, Champion, testified James approached him the day after the incident and offered jewelry for sale which was contained in a pink flowered pillow case. At the time of the anticipated sale James telephoned Washington, who appeared immediately. Other witnesses (Kemp and Harris) corroborated Champion's testimony concerning the events of this meeting. While no jewelry was produced, it was discussed between the defendants. Champion testified the pillow case he saw earlier was very similar to the one produced from the Walkers' guest bedroom. Later James sought out Champion and did sell him jewelry, many pieces of which were identified by the Walkers as belonging to them. Another witness, Williams, testified he, too, was approached by James with an offer of jewelry for sale. Williams purchased $150 worth. It was turned over to police and identified by the Walkers as belonging to them.
Two female inmates of the Bienville Parish jail testified defendant Washington discussed with them in detail some of the particulars of the crime with which he was charged, including how he and James had dressed, that they parked their car about a mile or mile and a half down the road from the house, that jewelry was stolen and left with James, and that they departed in the victims' vehicle, all of which details were consistent with the facts of this case. A third inmate, Mullins, testified defendant James made certain inculpatory statements to him to the effect that when the defendants were in the house the victims were so scared James thought they were going to have heart attacks.
In summary, there is no doubt James attempted to sell jewelry the day after the crime was committed and he did in fact sell a portion of the Walkers' stolen jewelry to Williams and Champion. Additionally, James made an inculpatory statement to at least one other inmate while incarcerated.
Washington made inculpatory statements to at least two witnesses in jail. Also, testimony by Champion and other witnesses indicated James telephoned and *620 subsequently met Washington just prior to the sale of a portion of the Walkers' stolen jewelrythis strongly suggests Washington's involvement in the crime.
We conclude there was clearly sufficient evidence to support both convictions. These assignments of error are without merit.

Failure to Grant New Trial

JAMES' ASSIGNMENT OF ERROR NO. 3

WASHINGTON'S ASSIGNMENT OF ERROR NO. 2
Both defendants contend the trial court erred in denying their motion for a new trial. They maintain a letter sent to defense counsel by two prosecution witnesses recanting their testimony represented sufficient "new and material evidence that, notwithstanding the exercise of reasonable diligence by the defendant, was not discovered before or during the trial ... and if the evidence had been introduced at the trial it would probably have changed the verdict or judgment of guilty." La.C.Cr.P. Article 851(3).
At the trial these two female witnesses had testified regarding inculpatory statements made to them by defendants while they were all incarcerated in the Bienville Parish jail.
A review of the record of the hearing on defendants' motion for new trial reflects that the two witnesses admitted writing the recantation letter but stated they did so out of fear produced by threats against them and their families. The two also stated the information in the letter was untrue and that they would stand by their original trial testimony.
It is not the trial judge's duty to weigh the new evidence as though he were the jury, rather it is his duty to determine whether this new material is fit for a new jury's judgment. Likewise, recantations of testimony are highly suspicious because they are tantamount to an admission of perjury so as to discredit the witness at a later trial. State v. Prudholm, 446 So.2d 729 (La.1984).
We find no abuse of the trial judge's discretion in denying defendants' motion for new trial and find these assignments of error to be without merit.

Excessive Sentences

JAMES' ASSIGNMENT OF ERROR NO. 4

WASHINGTON'S ASSIGNMENT OF ERROR NO. 4
Both defendants assert their sentences are excessive. They also object to being found second felony offenders under the purview of the habitual offender statute. La.R.S. 15:529.1.
We note that neither defendant objected to the trial court's finding of second felony offender status at the conclusion of the habitual offender hearing. See La.C.Cr.P. Article 841. In fact, defendant James stipulated to his prior felony conviction and evidence presented against both James and Washington included certified copies of the prior felony bills of information, court minutes and transcript of the guilty pleas.
In the alternative, defendants complain there was no showing they were properly Boykinized at these earlier proceedings. We find the exhibits reveal both defendants were represented by counsel, stated they understood the nature of the charges against them, discussed the charges with counsel and understood the rights they were waiving by pleading guilty. Accordingly, the state did meet its burden of proving both defendants were habitual offenders.
Defendants additionally complain their sentences were excessive. Each defendant received two 14-year consecutive sentences, the maximum imposable prison sentences.
It is well-settled that the sentencing judge is given wide discretion in imposing a sentence within the statutory limits and such a sentence should not be set aside as excessive in the absence of manifest abuse *621 of discretion by the sentencing judge. State v. Davis, 449 So.2d 452 (La.1984).
The sentencing guidelines of La.C. Cr.P. Article 894.1 provide the criteria to consider in determining whether a sentence is excessive. State v. Sepulvado, 367 So.2d 762 (La.1979); State v. Tully, 430 So.2d 124 (La.App.2d Cir.1983), writ denied 435 So.2d 438 (La.1983). While the trial judge need not articulate every aggravating and mitigating circumstance outlined in Article 894.1, the record must reflect he adequately considered these guidelines in particularizing the sentence to the defendant. Davis, supra.
Maximum sentences are generally reserved for the most egregious offenders in cases involving the most serious violations of the described offense. See State v. Lanclos, 419 So.2d 475 (La.1982) and State v. Richardson, 446 So.2d 820 (La. App. 2d Cir.1984).
In this case defendants were charged with armed robbery which carries a maximum penalty of 99 years in prison without benefit of parole. While they were convicted of simple robbery, the Walkers testified the intruders were armed. Additionally, evidence presented supports the uncharged offenses of aggravated burglary (armed entry of the house to commit a felony) and unauthorized use of a movable or possibly felony theft (taking the Walkers' vehicle). Such evidence of uncharged offenses is a valid consideration in sentencing in the absence of allegations of mistake or falsehood. See State v. Smith, 431 So.2d 838 (La.App.2d Cir.1983), writ denied 435 So.2d 463 (La.1983).
In sentencing these defendants, the trial court noted James was 23 years old and a second felony offender (convicted on various theft, robbery and burglary charges) who was on probation at the time of this offense. The trial judge also noted Washington was 21 years old and he, too, was a second felony offender (convicted on two counts of simple burglary), who had been paroled less than a month prior to this offense.
The trial court went on to observe the victims were an elderly couple obviously traumatized by this experience. Based on the above, we find that the trial court adequately complied with the provisions of La. C.Cr.P. Article 894.1 in particularizing the sentences and that the sentences were not unconstitutionally excessive. These assignments of error are without merit.

Errors Patent

WASHINGTON'S ASSIGNMENT OF ERROR NO. 5
Only defendant Washington includes this final assignment of error entitled, "Any other errors patent on the face of the record."
Appeals courts will review only those errors designated as an assignment of error and those errors which are "... discoverable by a mere inspection of the pleadings and proceedings and without inspection of the evidence." (error patent) La.C.Cr.P. Article 920.
Review for error patent is confined to an examination of the pleadings and proceedings and does not include evidentiary review. State v. Oliveaux, 312 So.2d 337 (La.1975); State v. Green, 482 So.2d 1095 (La.App.3d Cir.1986). The Louisiana Supreme Court has included as reviewable the caption, the statement of time and place of the holding court, the indictment or information and the endorsement thereon, the arraignment, the plea of the accused, the mentioning of the impaneling of the jury, the verdict, the judgment, the bill of particulars filed in connection with the short form indictment or information, and, in capital cases, a minute entry indicating that the jury has been sequestered as required by C.Cr.P. Art. 791. State v. Oliveaux, supra.
Under this "assignment" defendant complains of eight actions by the lower court and the prosecutor. Initially, we note none of these alleged errors may be properly designated as errors patent and none were properly designated as assigned *622 errors per URCA 2-12. In addition, no objection was made when five of the complained of actions occurred. In the absence of contemporaneous objection these five alleged errors are not properly before this court. See La.C.Cr.P. Article 841; State v. Ratcliff, 416 So.2d 528 (La.1982) and State v. Herrod, 412 So.2d 564 (La.1982).
For these reasons we find this assignment to be without merit.
Decree
For the reasons set forth above we affirm defendants' convictions and sentences.