521 So.2d 1206 (1988)
STATE of Louisiana, Appellee,
v.
Hoston SEAY, Appellant.
No. 19394-KA.
Court of Appeal of Louisiana, Second Circuit.
February 24, 1988.
*1208 Johnny Carl Parkerson, Monroe, for appellant.
William J. Guste, Jr., Atty. Gen., James A. Norris, Jr., Dist. Atty., Lee Ineichen & John Spires, Asst. Dist. Atty., Bastrop, for appellee.
Before MARVIN, SEXTON and NORRIS, JJ.
NORRIS, Judge.
Hoston Seay, age 53, was charged by separate bills of information with distribution of marijuana as a principal by aiding and abetting one JoAnn Tyson, LSA-R.S. 40:966 and 14:24 (Docket No. 85-1188A), and with distribution of marijuana, R.S. 40:966 (Docket No. 85-1494A). These bills were consolidated for trial along with the related charge against Ms. Tyson for distribution of marijuana (Docket No. 85-1189A). Both Seay and Tyson were represented at trial by retained counsel, Mr. Bentley. A twelve-member jury found Seay guilty on the charge of distribution as a principal but acquitted him on the other charge. He was sentenced to serve three months at hard labor and to pay a $1,000 fine and costs, or to serve 200 days in default. Now represented by new counsel, Mr. Parkerson, Seay contends the trial court erred in the following respects:
(1) The evidence was insufficient to maintain a conviction.
(2) The defendant's cases were improperly consolidated as to charges, and as to the codefendant, without defendant's informed consent thereto.
(3) The court erred in allowing joint representation of two defendants by one attorney, without advising defendant of the dangers of joint representation.
(4) In failing to grant appellant relief due to ineffective assistance of counsel, especially in counsel's failure to compel discovery of a confidential informant.
(5) In failing to grant a new trial to serve the best interests of justice.
Because these issues do not present reversible error, Seay's conviction and sentence are affirmed.

FACTS
The first incident occurred on February 13, 1985. Officer Willie Shaw, on loan to the Morehouse Parish Sheriff's Office from El Dorado, Arkansas, was doing undercover work to investigate local drug dealings. He worked with a confidential informant (CI) who, according to Shaw, took him to City Grocery Store in Collinston. Defendant Seay was there; the CI introduced Shaw to Seay as a friend who was new in town and needed some grass. Seay replied that he didn't have anything on him, but it was "at home." He told them they could go to his house and check with his wife; he *1209 gave directions to get there. The CI and Officer Shaw proceeded to Seay's house, making an unrelated stop along the way. When they arrived at the house, they were met by a black woman, Ms. Tyson,[1] who was Seay's common-law wife. The CI, who apparently knew Ms. Tyson, introduced Officer Shaw as a cousin from out of town and told her that Seay had sent them there to get some drugs. Tyson replied that she did not have much, only two bags, but Shaw said he would take those. He gave her two $10 bills and she gave him two baggies of material that was later proved to be marijuana. As Shaw and the CI were leaving, Seay drove up to the house, got out and asked them if everything was OK; the CI told him it was, and they left. As noted, the state charged Seay with distribution of marijuana by aiding and abetting Ms. Tyson in this offense. The matter was assigned Docket No. 85-1188A; Tyson was charged by separate bill of information with distribution under Docket No. 85-1189A.
The second incident occurred on March 12, 1985. Officer Shaw was riding around and talking to people, trying to buy marijuana, when someone told him there was a guy at The Palace Club in Collinston who would sell. Shaw and the CI drove there and met a man named Freddy J who told them that for five dollars he could get them some grass. Officer Shaw watched as Freddy J walked over to a white pickup truck and got in on the passenger side; also, Seay got in on the driver's side. Shaw could not see what went on inside the truck, but Freddy J emerged with a bag of marijuana that he sold to Shaw for $25. The state charged Seay with distribution of marijuana in Docket No. 85-1494A.
In the course of the prosecution, the three charges were consolidated, although the record does not show exactly when, or on whose motion, this was done. Court minutes for April 29, 1986, the first day of trial, simply note, "trial taken up, this case consolidated with cases number 85-1494A and 85-1189A for trial." Previously, on March 5, 1986, Seay and Tyson filed a motion to allow continued representation by the same attorney, Mr. Bentley. The motion was heard on March 11, with the trial court allowing continued joint representation. The court minutes do not reflect any of this, but a transcript of the hearing and ruling has been added to the record by stipulation.
At trial on April 30, 1986, Officer Shaw was the only witness who testified as to the facts for the state. Officer Downs, Shaw's supervisor on the job, testified as to the chain of possession of the bags of marijuana. Susan Rutledge, a criminalist at the North Louisiana Criminalistics Lab in West Monroe, verified that the bags contained marijuana. In defense, Seay took the stand and denied every aspect of Shaw's testimony. Notably, he denied ever having seen Shaw before trial, and he contradicted the directions he allegedly gave Shaw and the CI to get from City Grocery to his house; he even denied knowing there was such a place as City Grocery. Tyson also took the stand and denied much of Shaw's testimony. She admitted, however, that she had seen Shaw on one previous occasion when he had come to her house with a friend of hers named Benny Wilson. The friend had introduced Shaw as his cousin and they had asked for some marijuana. Tyson testified that she told them she had none. She denied ever selling marijuana to Shaw.
Seay was acquitted on the parking lot incident with Freddy J. He was found guilty on the other charge, as was Ms. Tyson. A month later, Mr. Parkerson enrolled as new counsel for Seay and moved to continue the sentencing. On September 28, he moved for a new trial, citing all the errors urged by the instant appeal. A hearing was held on February 3, 1987, and the motion was denied. Seay was sentenced to three months at hard labor and a $1,000 fine or 200 days in default.[2] The *1210 defense filed its assignment of errors on April 29, 1987 and its motion for appeal on June 5.
ASSIGNMENT 2: Improper consolidation
By this assignment, Seay claims his cases were improperly consolidated as to charges and as to a codefendant, without his informed consent. He argues that by putting on evidence of two separate and unrelated crimes, the state was able to obtain a conviction on one of them.
We would note at the outset that all the offenses charged, two against Seay and one against Tyson, apparently could have been joined in one indictment under the provisions of LSA-C.Cr.P. arts. 493 and 494. Defendants may be charged in one or more counts together and all defendants need not be charged in each count. Since all the counts could have been joined, then consolidation was proper. LSA-C.Cr.P. art. 706.
The record, however, supports the conclusion that Seay consented to a consolidation of offenses for trial. The trial court stated on the record at the beginning of trial:

The defense and the state have agreed to try the matters together, of both defendants together, and to try Mr. Seay on both distribution of marijuana and distribution of a controlled dangerous substance together. R.p. 108 (emphasis added).
The court minutes also reflect that the cases were consolidated. The record further shows that there was no timely objection lodged to the court's statement and no motion to sever. Alleged defect in joinder or consolidation may be waived. State v. Peters, 298 So.2d 276 (La.1974) (on rehearing); State v. Mallett, 357 So.2d 1105 (La. 1978), cert. denied 439 U.S. 1074, 99 S.Ct. 848, 59 L.Ed.2d 41 (1979); State v. Thibodeaux, 490 So.2d 572 (La.App. 3d Cir.1986), writ denied 494 So.2d 325 (La.1986). We therefore conclude that Seay effectively waived his objection to the consolidation.
Even if the consolidation had been inappropriate and Seay had lodged an objection which was overruled, we would not be able to find reversible error. Severance of joined offenses is not available without a showing of prejudice. LSA-C.Cr.P. art. 495.1. Seay's only argument as to prejudice is that he was convicted on one count. The law is very well settled that if the jury can keep the evidence of the offenses separate and distinct, as evidenced by acquittal on some and conviction on other charges, there is no prejudice. State v. Machon, 410 So.2d 1065 (La.1982); State v. Bennett, 457 So.2d 741 (La.App. 2d Cir.1984).
This assignment does not present reversible error.
ASSIGNMENT 3: Multiple representation
By this assignment, Seay claims in essence that his conviction should be reversed because his trial attorney, Mr. Bentley, represented both him and Ms. Tyson. We note at the outset that multiple representation is not per se illegal and does not violate constitutional guarantees unless it gives rise to a conflict of interest. USCA-Const. amend. 6; LSA-Const. Art. 1 § 13; State v. Ross, 410 So.2d 1388 (La.1982); State v. Kahey, 436 So.2d 475 (La.1983).
The relationship between multiple representation and ineffective assistance of counsel has been thoroughly examined by the United States Supreme Court in Holloway v. Arkansas, 435 U.S. 475, 98 S.Ct. 1173, 55 L.Ed.2d 426 (1978), and Cuyler v. Sullivan, 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980). In Holloway, the defendant raised the issue of conflict of interest prior to a joint trial. The Supreme Court concluded that in this situation the trial judge is required either to appoint separate counsel or to take adequate steps to ascertain whether the risk of a conflict of interest was too remote to warrant separate trials. Holloway, 435 U.S. at 484, 98 S.Ct. at 1178, 55 L.Ed.2d 434. In Sullivan, *1211 the defendant did not raise the issue of conflict of interest either before or during his separate trial. The Supreme Court held:
In order to establish a violation of the Sixth Amendment, a defendant who raised no objection at trial must demonstrate that an actual conflict of interest adversely affected his lawyer's performance. * * * [A] defendant who shows that a conflict of interest actually affected the adequacy of his representaton need not demonstrate prejudice in order to obtain relief. But until a defendant shows that his counsel actively represented conflicting interests, he has not established the constitutional predicate for his claim of ineffective assistance. 446 U.S. at 348, 349-350, 100 S.Ct. at 1718-1719, 64 L.Ed.2d at 346, 347 (citations omitted).
Seay argues he is entitled to rely on the Holloway rule because before trial he filed a "Motion to Allow Continued Representation of Defendants by Same Attorney." R.p. 20. This motion had been filed in response to concern expressed off the record by the assistant district attorney to defense counsel about possible error arising from multiple representation. In the motion, Seay and Ms. Tyson alleged they had discussed the matter with Mr. Bentley; they urged the court to allow him to continue to represent both of them. In response, the trial court conducted a hearing at which it explained the nature of conflicting defenses, pointing out that counsel was supposed to represent each defendant equally and not favor one over the other. The court further informed them that each was entitled to hire separate counsel, and that if he or she could not afford one, the court would appoint one. The court then asked them if they still wanted Mr. Bentley to represent them; they said yes.
For Holloway to be applicable, the defendant must object to multiple representation before trial, urging a conflict of interest. In the instant case, Seay did not object before trial but rather exhorted the court to approve his right to multiple representation; this is exactly the opposite of the relief he now seeks on appeal. Seay never argued, suggested, or advanced the slightest clue that a conflict of interest might exist. Only after his conviction has he decided to complain of the very action he actively sought and received from the court. Under these circumstances we will not apply the Holloway rule. Since he did not raise a pre-trial objection urging conflict of interest, Seay must prove an actual conflict of interest that adversely affected his attorney's performance. Cuyler v. Sullivan, supra; State v. Rowe, 416 So.2d 87 (La.1982). An actual conflict of interest is established when the defendant proves that his attorney was placed in a situation inherently conducive to divided loyalties. Zuck v. Alabama, 588 F.2d 436 (5th Cir.1979), cert. denied 444 U.S. 833, 100 S.Ct. 63, 62 L.Ed.2d 42 (1979).
If a defense attorney owes duties to a party whose interests are adverse to those of the defendant, then an actual conflict exists. The interest of the other client and the defendant are sufficiently adverse if it is shown that the attorney owes a duty to the defendant to take some action that could be detrimental to his other client. 588 F.2d at 439.
A reviewing court cannot presume that multiple representation and the possibility of conflict has resulted in ineffective assistance of counsel. Multiple representation may even be desirable for a particular defendant as a means of assuring against reciprocal recrimination in cases "where a common defense gives strength against a common attack." Glasser v. United States, 315 U.S. 60, 92, 62 S.Ct. 457, 475, 86 L.Ed. 680, 710 (1942) (Frankfurter, J., dissenting).
Seay argues that the conflict of interest is "apparent" in the instant case because Mr. Bentley was obligated to honor Ms. Tyson's desire to testify, thereby injuring Seay's case by partly corroborating Officer Shaw's testimony. We cannot help but note that at the hearing on the motion for a new trial, Ms. Tyson said she had not wanted to testify. Nevertheless, applying the test of whether an "actual *1212 conflict of interest" existed, we conclude that Seay has failed to meet the burden.
The defense offered by both Seay and Tyson was that the undercover agent, Shaw, was not a credible witness; and that the testimony of the defendants, denying Shaw's version of events, created reasonable doubt whether the alleged drug sale ever took place. Mr. Bentley attempted to attack Shaw's credibility by showing, over the state's repeated objections, that he had been discharged from the El Dorado Police Department under questionable circumstances that cast doubt on his believability. Seay and Ms. Tyson each testified that he or she did not know of a store called City Grocery in Collinston, and that the directions that Shaw said Seay supplied would not be adequate to locate Seay's house. Seay flatly testified that he was never approached by Shaw and the CI, never saw them leaving his house as he drove up, and never asked them if everything was OK. Ms. Tyson testified that she had met Shaw once, when he came to her house with a friend of hers, Benny Wilson, who introduced Shaw as his cousin. She stated they did indeed ask if she had any marijuana; however, she told them she had none, and she did not sell them any. She thought this occurred prior to February 13, 1985. She did not testify that Benny Wilson and Officer Shaw told her that Seay had directed them to her; she also did not testify that Seay drove up as they were leaving.
Given this defense theory, we conclude that Seay's and Ms. Tyson's positions were compatible and entirely consistent. Seay has not actually argued antagonistic defenses, and nothing in the record suggests it. Under the jurisprudence, the mere allegation that one codefendant intends to point an accusing finger at the other is not sufficient to support a claim of actual conflict of interest. State v. Kahey, supra; State v. Murphy, 463 So.2d 812 (La.App. 2d Cir.1985), writ denied 468 So.2d 570 (La. 1985). But not even this allegation has been made in the instant case, thus providing all the less reason to find an actual conflict here.
Seay also argues that if Bentley had not represented both defendants, then Ms. Tyson would not have testified and hurt his case. However, this argument could be advanced in any case of multiple representation. State v. Ross, supra. Seay has not distinguished this case by demonstrating some duty on the part of his attorney to take some action that would have been detrimental to one of the defendants. Zuck v. Alabama, supra. Mr. Bentley might have taken another approach, but the possibility that this might have resulted in a different outcome falls far short of proving a deprivation of constitutional rights. State v. Edwards, 430 So.2d 60 (La.1983). In fact, if Ms. Tyson had not testified and Seay had nevertheless been convicted, then by this line of reasoning he would probably argue that Bentley's failure to call her to the stand was due to multiple representation and an actual conflict of interest. The possibility of advancing these ironically opposite positions underscores the need to raise the objection and the grounds before trial. To raise it only after conviction, based solely on an unfavorable verdict, asks the reviewing court to indulge in mere speculation. Seay has not even shown how he might have benefited from another strategy. State v. Kahey, supra. He certainly has not shown that Mr. Bentley's decision to call Ms. Tyson to the stand was the result of an actual conflict.
Finally, our own review does not reveal any actual conflict. Notably, the attorney was not asked to cross-examine a former client who turned state's witness. State v. Kirkpatrick, 443 So.2d 546 (La.1983), cert. denied 466 U.S. 993, 104 S.Ct. 2374, 80 L.Ed.2d 847 (1984); neither defendant pled guilty and placed the attorney in the predicament of violating a confidence, State v. Ross, supra; and neither defendant tried to shift the primary blame to the other, State v. Kahey, supra. In sum, we cannot detect any actual conflict.
Since Seay did not urge the existence of a conflict of interest before trial and has failed to show an actual conflict of interest on appeal, his argument must fail. We further note that the trial court took adequate *1213 steps to ascertain whether the risk of conflict was too remote to warrant separate counsel in the context of the motion actually advanced, which did not allege a conflict of interest. This assignment does not present reversible error.

ASSIGNMENT 4: Ineffective assistance of counsel
By this assignment Seay contends the trial court failed to grant relief due to ineffective assistance of counsel at trial. As a general rule, claims of ineffective assistance of counsel are more properly raised by application for post conviction relief in the trial court where a full evidentiary hearing may be conducted. State ex rel. Bailey v. City of W. Monroe, 418 So.2d 570 (La.1982); State v. Prestridge, 399 So. 2d 564 (La.1981); State v. Deaton, 486 So.2d 1134 (La.App. 2d Cir.1986), writ denied 493 So.2d 633 (La.1986). Only when the record discloses sufficient evidence to decide the issue of ineffective assistance of counsel when raised by assignment of error should the issue be addressed on appeal. State v. Seiss, 428 So.2d 444 (La. 1983).
Seay has urged three specific grounds of ineffective assistance: failure to object to multiple representation, failure to object to improper consolidation, and failure to compel disclosure of the CI's identity. We have discussed the first two of these issues, as they were designated in the assignments of error. However, the third has never been argued to any court until the filing of the brief in the instant appeal. Appellant's brief treats this issue as though it has been properly preserved for appeal. However, it was neither objected to at trial, raised in the motion for new trial, nor assigned as error for appeal. Under these circumstances, we will not consider the issue. LSA-C.Cr.P. arts. 841, 920(1); URCA-Rule 2-12; State v. James, 490 So. 2d 616 (La.App. 2d Cir.1986); State v. Lee, 343 So.2d 1060 (La.1977); State v. Cheniere, 343 So.2d 177 (La.1977). We would only observe that Ms. Tyson probably identified the CI as her friend Benny Wilson, R.p. 339, and Mr. Bentley's closing statement indicates that both Seay and Ms. Tyson knew who the CI was. R.p. 361. The fact that disclosure was unnecessary probably explains why Mr. Bentley did not compel it.
We have examined the record as a whole for evidence of the trial attorney's performance. Mr. Bentley extensively cross-examined the state's primary witness, Officer Shaw, with some measure of success in defeating the state's objections. He also cross-examined the minor witnesses. He put on a defense. He delivered a lengthy closing argument. His efforts resulted in a not guilty verdict on one of the two charges against Seay.
The complaints about consolidation, multiple representation and disclosure of the CI's identity really address Mr. Bentley's trial strategy. For instance, the election to call or not to call a particular witness is a matter of trial strategy and not per se evidence of ineffective counsel. State v. Berry, 430 So.2d 1005 (La.1983); State v. Keleman, 444 So.2d 1328 (La.App. 2d Cir.1984), writ denied 447 So.2d 1069 (La.1984); United States v. Lauga, 762 F.2d 1288 (5th Cir.1985), cert. denied 474 U.S. 860, 106 S.Ct. 173, 88 L.Ed.2d 143 (1985). The record evidence, including testimony at the motion for new trial, adds precious little insight into the matters of consolidation and multiple representation, and absolutely nothing regarding failure to request disclosure of the CI's identity. Mr. Bentley was not called to testify at this hearing, and Seay and Ms. Tyson both professed not to remember much of their discussions with him.
This record is not sufficient for us to make an intelligent review of the issue of ineffective assistance of counsel. The defendant's remedy is therefore post conviction relief where the quality of the attorney's performance can be fully developed and explored. State v. Prudholm, 446 So. 2d 729 (La.1984).

ASSIGNMENTS 1 and 5: Sufficiency of evidence
By these related assignments, Seay contends the trial court erred in not granting his motion for a new trial. He urges that *1214 the evidence was insufficient to maintain a conviction and that a new trial was necessary to serve the best interests of justice.
Ordinarily there is no appeal from the trial court's refusal to grant a motion for new trial except for error of law. LSA-C.Cr.P. art. 858; State v. Korman, 439 So.2d 1099 (La.App. 1st Cir.1983). On the motion for new trial, the trial court may assess only the weight of the evidence. Tibbs v. Florida, 457 U.S. 31, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982). The question of sufficiency of evidence should be raised by motion for post verdict judgment of acquittal, LSA-C.Cr.P. art. 821; State v. Marshall, 479 So.2d 598 (La.App. 1st Cir.1985). Since the subject of these assignments is really sufficiency of the evidence, and this is a constitutional issue, we will treat them as though they had been properly framed under art. 821. State v. Daigle, 439 So.2d 595 (La.App. 1st Cir. 1983); State v. Ford, 467 So.2d 1243 (La. App. 2d Cir.1985), writ denied 474 So.2d 1302 (La.1985).
In order to satisfy due process standards, the record evidence, viewed in light most favorable to the prosecution, must be sufficient for a rational factfinder to conclude that the essential elements of the crime were proved beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).
The evidence in this case was not extensive. In response to a question, Seay told Officer Shaw and the CI that he did not have any marijuana on his person, but he directed them to his house to make a purchase. They went there and made the purchase. As they were leaving, Seay drove up and asked if everything was OK; viewed in light most favorable to the prosecution, this was Seay's way of assuring himself that the transaction he set in motion had been satisfactorily completed.
The crime of distribution is the knowing or intentional distribution of a CDS. LSA-R.S. 40:966A(1). Principals are all persons concerned in the commission of a crime, whether present or absent, and whether they directly commit the act constituting the offense, aid and abet in its commission, or directly or indirectly counsel or procure another to commit the crime. LSA-R.S. 14:24. The actual distribution of a CDS may be accomplished through the agency of a third party. State v. Gentry, 462 So.2d 624 (La.1985).
Viewed in light most favorable to the prosecution, this evidence would support a rational factfinder's conclusion that Seay sent Officer Shaw and the CI to his house for the purpose of an illegal drug transaction which ultimately took place. Though not present at the time of the sale, Seay aided and abetted in its commission by sending the purchasers to a person (his common-law wife) and place (his own home) where they would purchase the marijuana. See State v. Morris, 508 So.2d 608 (La.App. 2d Cir.1987), writ denied (La.1987); State v. Hutchins, 502 So.2d 606 (La.App. 3d Cir.1987). The evidence was sufficient to maintain this conviction.
These assignments do not present reversible error. We have found no errors patent, LSA-C.Cr.P. art. 920(2). Seay's conviction and sentence are therefore affirmed.
AFFIRMED.
NOTES
[1] She was also called "Mrs. Jones." We will refer to her as Ms. Tyson.
[2] The signed judgment sets the default time at 30 days, R.p. 66, but the sentencing transcript as well as the court minutes set it at 200 days. R.p. 432, 7. The trial court's written sentence considerations read, "3 mos. imprisonment with hard labor and a fine of $1000/c/200." R.p. 63. The state's brief adopts the 30 day version. The defendant's motion for appeal and brief do not mention the amount of default time, but the motion erroneously states the sentence as three years. R.p. 71.