573 So.2d 610 (1991)
STATE of Louisiana, Appellee,
v.
Cecil BAILEY, Appellant.
No. 22174-KA.
Court of Appeal of Louisiana, Second Circuit.
January 23, 1991.
*611 May and Beal by James E. Beal, Jonesboro, for appellant.
William J. Guste, Jr., Atty. Gen., John Blake, Dist. Atty., H. Russell Davis, Asst. Dist. Atty., for appellee.
Before MARVIN, C.J., HIGHTOWER, J., and PRICE, J. Pro Tem.
MARVIN, Chief Judge.
After being charged with simple burglary, Cecil Bailey appeals his conviction of the attempt of the crime, contending that *612 he was denied effective assistance of counsel and that evidence was insufficient for the jury to find him guilty beyond a reasonable doubt.
The record is sufficient to allow us to consider his first contention of ineffective assistance of counsel. State v. Seay, 521 So.2d 1206, 1213 (La.App. 2d Cir.1988).
We find both assignments without merit and affirm Bailey's conviction.

FACTS
Bailey was arrested on October 24, 1988, having been found inside the Dixie Dandy grocery building after employees had closed and locked the store for the evening. Before departing about 8:30 p.m., Wade Gipson, an employee, had checked all areas and rooms of the store and saw no one. Two restrooms are inside of the stockroom which is separated from the retail area by two metal swinging doors marked "Employees Only." This area is not open to the public but occasionally a customer who requests permission is allowed use of the appropriate restroom.
The men's restroom door opens against the toilet. Gipson testified that the men's room was not occupied when he checked it. He said he did not see, or hit with the door, any person in the men's room, the mirror in which reflects the toilet area to a person when the door is open. One can directly see the toilet area only when inside the restroom with the door closed. Gipson turned off the light in the men's room after leaving the door open as he routinely does when checking the area upon closing.
After the store was checked, Shannon Evans, a co-owner of the store, closed and locked the store and activated the store's electronic surveillance system which detects movement. The store's video camera surveillance system was in place but was not activated on the night Bailey was caught.
About five minutes after Evans left the store, the store's alarm sounded, alerting Evans and the police. Evans returned, unlocked and entered the store, armed with a shotgun. He immediately heard Bailey yell from behind the swinging doors leading to the stockroom, "Don't shoot! Don't shoot! I haven't got nothing. I ain't done nothing." Evans directed Bailey out of the store as Officer Pietsch and Deputy Bradley were arriving at the store's parking lot. Deputy Bradley checked possible entrances to the store and found no signs of forced entry.
No burglary tools were found in the store or on Bailey's person. Nothing was stolen from the store. A damp and twisted piece of paper towel or toilet tissue was found stuck over and covering the lens of a surveillance camera located above and between the two restrooms in the stockroom. Evans testified that he had not seen the lens of one of the cameras covered in such a way. In his statements to the police, Bailey denied placing the paper over the lens.
Both Evans and Gipson denied seeing Bailey when they checked the store or giving him permission to use the store's restroom. Bailey's presence in the stockroom, especially after the store was closed and locked, was unauthorized.
After being arrested and given Miranda warnings, Bailey stated to the officers that he had been drinking and had done some cocaine and gone to the store to use the restroom. He told police he entered the store before it closed, went into the men's room and fell asleep while on the toilet.
Bailey did not testify before the jury.

INEFFECTIVE ASSISTANCE OF COUNSEL
Bailey contends that he was denied effective assistance of counsel because his attorney failed to move to suppress his "inculpatory" statement and failed to object or move for mistrial when a police witness referred to other crimes evidence (use or possession of cocaine). These contentions derive from Bailey's explanation of his presence in the store to the law enforcement officers after he was arrested.
Ordinarily, the appellate record does not allow review of claims of ineffective assistance of counsel. The claim, on appeal, *613 is relegated to post conviction proceedings, where evidence may be heard on the issue. If the record is sufficient to allow review, however, we may address the claim on appeal. State v. Seay, supra. This record allows our review of Bailey's two contentions.

THE TEST
The right to counsel under the Sixth Amendment of the U.S. Constitution is the right to effective counsel. McMann v. Richardson, 397 U.S. 759, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970). The purpose of the constitutional requirement is to ensure a fair trial. We delve into the claim of ineffective assistance to determine whether the function of the adversarial process was so undermined by counsel's conduct that the trial cannot be relied on to have produced a just result. Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).
Courts presume that counsel has rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. To overcome this presumption, a defendant must meet both prongs of the Strickland, supra, test. A defendant must first show that counsel's representation fell below the standard of reasonableness, determined objectively. Secondly, a defendant must show that counsel's performance deprived him of a fair trial and a reliable result. To show prejudice, the defendant must show that, absent the proved errors, a reasonable probability exists that the factfinder would have had a reasonable doubt about his guilt.
Bailey's claim of his counsel's failure to move to suppress his allegedly "inculpatory" statement is based on testimony of the officers that after Bailey was advised of his rights, Bailey said he wanted to talk to a lawyer. Bailey additionally argues that his counsel did not provide effective assistance because the jury heard, without objection from his counsel, the officers recite that Bailey had said to them that he had used cocaine before he entered the store.
If a defendant squarely invokes his right to have counsel present during interrogation, the defendant's later answers to further or continued interrogation are inadmissible. State v. Holmes, 467 So.2d 1177 (La.App. 2d Cir.1985), writ denied 470 So.2d 119. Unless an accused waives his right to counsel, statements made during a custodial interrogation, whether exculpatory or inculpatory, should be suppressed as a general rule. State v. Harper, 430 So.2d 627 (La.1983).
Bailey's second claim of ineffective assistance of counsel refers to Bailey's counsel's failure to move for an admonition or mistrial under CCrP Art. 771 when Officer Pietsch testified that Bailey said that he had been drinking and had done a sniff of cocaine before going into the store and falling asleep on the toilet.
Bailey contends his counsel should have asked either for an admonition on the basis that Bailey's admission of another crime, using or possessing cocaine, was irrelevant, immaterial and prejudicial other-crimes evidence, or for a mistrial on the basis that an admonition would not "cure" the prejudice and assure a fair trial. CCrP Art. 771.

COUNSEL WAS EFFECTIVE
Although we shall assume, arguendo, that Bailey's counsel could have successfully moved the court in each of the instances of which Bailey now complains, we do not find that his counsel's failure in either instance fell below an objective standard of reasonableness for the following reasons:
Bailey's presence in the store after it closed could have been, and was, established other than by Bailey's statement to law officers. His presence in the store, if unexplained, when coupled with the wet paper covering the lens of the surveillance camera, after the store closed, was highly incriminating and required some explanation.
Bailey's "explanation" of his presence to police did not incriminate him of any element in the crime of simple burglary, but contrarily and if believed, it negated his unauthorized entry and his intent to commit *614 a theft or a felony because he said he entered the store before it closed for the purpose of using the restroom. Similarly, Bailey's statements to police about his being intoxicated and "doing" cocaine made his story more plausible in that the more affected he was by drugs and alcohol, the more likely he would be to fall asleep on the toilet, a corroborative negation of the intent element of either burglary or attempted burglary.
Counsel's "failure" in the two respects of which Bailey complains, in our opinion, does not fall below an objective standard of reasonableness. The officers who interrogated Bailey did not and could not mention, to the jury, his credibility, his prior convictions of crimes, or suggest that they did not believe his explanation. They merely recited his answers to their questions why he was in the store.
Bailey and his counsel, pursuant to discovery, were furnished by the State with a copy of Bailey's criminal record, which we have reviewed. This record includes several felony convictions, which began when he was 18 years old, for forgeries in 1975; for burglaries in 1976, 1982, 1985, and 1986 and several probation violations and incarcerations in Louisiana and in Texas.
The police recitation to the jury of Bailey's explanation to them could have enhanced the credibility of the explanation. If Bailey's statements to police had been suppressed and he had taken the witness stand to directly explain his presence to the jury, his record of burglary convictions would have enervated whatever credibility and weight the jury might have given to the explanation.
Bailey's counsel obviously made the deliberate choice to allow the law officers to testify to Bailey's "explanation" of his presence and to avoid placing him under oath and subjecting him to cross-examination and attacks on his credibility that would reveal Bailey's criminal record. Counsel's choice in this respect was reasonable in our opinion.
Bailey may have been convicted by the jury of the crime charged if his statements to police had been suppressed and the jury had heard the explanation, and his criminal record, from Bailey on the witness stand. The explanation the jury heard could have come only from Bailey, either through police witnesses, or himself.
Bailey's presence in the store had to be explained. It was. Bailey's criminal record did not have to be revealed to the jury. It wasn't. The circumstances presented to the jury showed Bailey and his explanation in the most favorable light possible. The jury did not convict Bailey of burglary, but of the lesser crime of attempted burglary.
Under these circumstances, Bailey has not overcome, under the Strickland standards, the presumption that his counsel acted reasonably and was effective. His argument to the contrary is ineffective and without merit.

SUFFICIENCY OF EVIDENCE
Bailey's second assignment questions whether the evidence was legally sufficient to convict him of attempted simple burglary. LRS 15:271, 438. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).
Where a conviction is based on circumstantial evidence, we determine whether, after viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have concluded beyond a reasonable doubt that every reasonable hypothesis of the defendant's innocence had been excluded, as the law requires. LRS 15:438. State v. Buxton, 416 So.2d 71 (La. 1982).
Circumstantial evidence is not inherently less reliable than direct evidence. The gist and key to the sufficiency of circumstantial evidence to convict is the inference or process of reasoning by which the conclusion is reached. An evidentiary guide for the jury, LRS 15:438 suggests to the appellate court the methodology to employ to determine whether the rational juror contemplated in Jackson v. Virginia might have concluded that the defendant's alternative hypothesis of innocence is sufficiently unreasonable so as to allow the ultimate conclusion *615 that the evidence proved guilt beyond a reasonable doubt. State v. McFadden, 476 So.2d 413, 424 (La.App. 2d Cir. 1985), writ denied 480 So.2d 739.
The sufficiency test, whether expressed in terms of doubt or of hypothesis, questions the reasonableness of the ultimate conclusion drawn from facts and inferences from facts in the particular case. In some cases, the defendant's alternative theory or hypothesis is found to be only a remote possibility and unreasonable when it is compared with the prosecution's hypothesis of guilt that is consistent overall with the evidence of guilt in the particular case. Where, for logical reasons discernable from the circumstances, it is apparent that the jury simply did not believe the defendant's testimony, or "explanation," or "hypothesis," as is the jury's prerogative, the evidence, even though in part circumstantial, is found legally sufficient to convict. See State v. McFadden, supra, at 425. Each case stands on its own facts. Compare State v. Marcello, 385 So.2d 244 (La.1980).
Simple burglary is defined in LRS 14:62 as the "unauthorized entering of any ... structure ..., with the intent to commit a felony or any theft therein...." One attempts to commit simple burglary when he has the specific intent to commit the offense and does or omits an act for the purpose of and tending directly toward accomplishing his object. LRS 14:27.
Viewing the evidence in the light that most favorably supports the jury verdict, we must determine whether a rational juror could have disbelieved and rejected Bailey's hypothesis or explanation that he fell asleep on the store's toilet while using the stockroom restroom with implied permission.
There were no signs of forced entry into the store. It therefore seems reasonable and logical to conclude, as Bailey argues, that he entered the store through the front doors when the store was open to the public.
No one was in the store's restroom when Gipson checked it before closing. The door to the restroom was left open after the room was checked. As he argues, Bailey may have entered the restroom after it had been checked. Although employees checked the store before closing, Bailey, not detected by employees, was in the store when it closed.
Bailey denied placing damp paper over the lens of the surveillance camera. The fact that the paper was damp when it was found sticking to the camera lens shortly after police arrived allows the inference that the paper was deliberately placed there only a short while before. Evans stated that he had never seen paper over the lens of a surveillance camera in the store. Bailey and the camera with the paper-covered lens were found in the stockroom after the alarm sounded.
If the jury did not believe Bailey's explanation to the police, several logical and reasonable inferences are allowed: (1) Bailey entered the store through a front door of the retail area sometime before the store closed. (2) He entered, and then hid himself in, the stockroom area. (3) Shortly after the store closed, the paper was intentionally dampened and stuck on the lens of the surveillance camera to prevent videotaping of a person or persons engaged in criminal conduct within the stockroom. (4) The paper was not placed on the lens by a store employee or a stranger, but by Bailey, whose movement after the store closed was detected by the alarm system.
The ultimate questionwhether the rational juror contemplated by Jackson v. Virginia could have found Bailey's alternative hypothesis of innocence sufficiently un-reasonable and could have concluded that the evidence proved him guilty beyond a reasonable doubtis answered in the affirmative. State v. McFadden, supra. The jury could have found Bailey's explanation was unbelievable, unreasonable and not worthy of credence. Bailey did not explain, but only denied he knew, how or by whom the damp paper was stuck on the camera lens in the stockroom. We find no error of law and do not disturb the jury's assessment of credibility and factual conclusions.
The fact that Bailey may have entered the store during business hours is no defense. Although entry into a building open *616 to the public during given hours is considered as an authorized entry with the implied consent of the owner, the implied authority extends only to the designated public areas, and not private or employees-only areas, of the store. See State v. Dunn, 263 La. 58, 267 So.2d 193 (1972). Bailey's entry into the stockroom, even if before closing time, was an unauthorized entry.
The jury could have concluded that Bailey entered the store before closing time to hide in the stockroom or elsewhere, with the intent to burglarize the store after closing time.
When viewed in the light most favorable to the prosecution, the evidence is legally sufficient to have convinced the jury beyond a reasonable doubt that Bailey's "explanation" or hypothesis is unreasonable and that the evidence, even though circumstantial, allowed the ultimate conclusion that he was guilty of attempted simple burglary beyond a reasonable doubt.

DECREE
Bailey's conviction is AFFIRMED.