925 So.2d 690 (2006)
STATE of Louisiana, Appellee
v.
Walter HOUSTON, Appellant.
No. 40,642-KA.
Court of Appeal of Louisiana, Second Circuit.
March 10, 2006.
*693 Louisiana Appellate Project, by Christopher A. Aberle, Annette Fuller Roach, Mandeville, for Appellant.
Paul J. Carmouche, District Attorney, Laura Wingate, Ron Stamps, Assistant District Attorney, for Appellee.
*694 Before BROWN, MOORE and LOLLEY, JJ.
MOORE, J.
The appellant was charged by bill of indictment with three counts of aggravated rape and five counts of molestation of a juvenile.[1] After a jury acquitted him on the rape charges and convicted him on the five counts of molestation of a juvenile, he was adjudicated a third felony offender and sentenced on count four to serve 24 years at hard labor without benefit of parole, probation or suspension of sentence. He received concurrent sentences of 15 years at hard labor for each of the other four counts, along with payment of costs. The appellant filed a timely appeal of the convictions and sentences. We affirm in part, amend the conviction for count eight, and remand for resentencing.

FACTS
The defendant's secret sexual activities with the victims came to light in late December 2002, when SJ was tickling her daughter, TJ, and accidentally brushed up against the four-year-old's vaginal area. The child told her she was not supposed to touch her there because she (SJ) was not a man, and she was not "Papa," the appellant herein. The child told her mother that appellant had rubbed her and kissed her "private" when her grandmother was not there. Appellant is the child's step-grandfather.
SJ called her sister's house to speak with her other daughter, KJ, and asked her if appellant had touched her "in the wrong place." With reluctance, KJ, age seven, stated that appellant had touched her "kitty area" a lot of times when her grandmother was not at home.
SJ spoke with her sister, TA, to determine if her daughters SA, age 8, and JL, age 14, had also been molested. The young girls also said the appellant had done or said inappropriate things to them. Additionally, her son, DS, age 10, stated that he had seen the appellant touch the "privates" of his cousins and younger sister when they were in the swimming pool.
The women contacted The Gingerbread House where videotaped interviews of all five children were conducted on January 8, 2003. The three younger girls also underwent physical examinations to determine if there was any evidence of sexual abuse.
Subsequently, the appellant was charged by indictment with three counts of aggravated rape and five counts of molestation of a juvenile for crimes alleged to have occurred between June 8, 2002 and January 2003. He was tried by a jury of twelve.
At trial, the state introduced the videotaped interviews of the five children into evidence and adduced testimony from the children, their mothers, investigators and medical experts. The defense called the appellant's wife as a witness. She testified that her daughter had framed the appellant because of an argument between them around Labor Day 2002.
The appellant was acquitted of the aggravated rape charges but found guilty of all five counts of molestation. The trial court denied the motions for post verdict judgment of acquittal and a new trial. The appellant was adjudicated a third felony offender on January 5, 2005. At the *695 sentencing hearing on February 2, 2005, the trial court enhanced the penalty of count four and ordered the appellant to serve 24 years at hard labor without benefit of parole, probation or suspension of sentence. The sentence for each of the other four counts was 15 years at hard labor to run concurrently and costs.
The trial court amended the sentence on March 14, 2005, to reflect that the appellant was ordered to register as a sex offender. This appeal followed.

DISCUSSION
By his first five assignments, Houston contends that the evidence was insufficient to convict on each of the molestation charges; by his sixth assignment, he contends the court erred in failing to grant his motion for post verdict judgment of acquittal, which is also a sufficiency of evidence claim.
When issues are raised on appeal both as to the sufficiency of the evidence and as to one or more trial errors, the reviewing court should first determine the sufficiency of the evidence. The reason for reviewing sufficiency first is that the accused may be entitled to an acquittal under Hudson v. Louisiana, 450 U.S. 40, 101 S.Ct. 970, 67 L.Ed.2d 30 (1981), if a rational trier of fact, viewing the evidence in accord with Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), in the light most favorable to the prosecution, could not reasonably conclude that all of the elements of the offense have been proven beyond a reasonable doubt. State v. Hearold, 603 So.2d 731 (La.1992); State v. Bosley, 29,253 (La. App. 2 Cir. 4/2/97), 691 So.2d 347, writ denied, 97-1203 (La.10/17/97), 701 So.2d 1333.
This standard, now legislatively embodied in La. C. Cr. P. art. 821, does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the fact finder. State v. Robertson, 96-1048 (La.10/4/96), 680 So.2d 1165. The appellate court does not assess the credibility of witnesses or reweigh evidence. State v. Smith, 94-3116 (La.10/16/95), 661 So.2d 442.
The Jackson standard is applicable in cases involving both direct and circumstantial evidence. An appellate court reviewing the sufficiency of evidence in such cases must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When the direct evidence is thus viewed, the facts established by the direct evidence and inferred from the circumstances established by that evidence must be sufficient for a rational trier of fact to conclude beyond a reasonable doubt that defendant was guilty of every essential element of the crime. State v. Sutton, 436 So.2d 471 (La.1983); State v. Owens, 30,903 (La.App. 2 Cir. 9/25/98), 719 So.2d 610, writ denied, 98-2723 (La.2/5/99), 737 So.2d 747.
A reviewing court accords great deference to a jury's decision to accept or reject the testimony of a witness in whole or in part. State v. Gilliam, 36,118 (La.App. 2 Cir. 8/30/02), 827 So.2d 508, writ denied, XXXX-XXXX (La.11/14/03), 858 So.2d 422.
Where there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency. State v. Allen, 36,180 (La. App. 2 Cir. 9/18/02), 828 So.2d 622, writs denied, 2002-2595 (La.3/28/03), 840 So.2d 566, 2002-2997 (La.6/27/03), 847 So.2d 1255, cert. denied, 540 U.S. 1185, 124 S.Ct. 1404, 158 L.Ed.2d 90 (2004).
In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness's testimony, if *696 believed by the trier of fact, is sufficient support for a requisite factual conclusion. State v. White, 28,095 (La.App. 2 Cir. 5/8/96), 674 So.2d 1018, writ denied, 96-1459 (La.11/15/96), 682 So.2d 760, writ denied, 98-0282 (La.6/26/98), 719 So.2d 1048.
La. R.S. 14:81.2(A) defines molestation of a juvenile as follows:
A. Molestation of a juvenile is the commission by anyone over the age of seventeen of any lewd or lascivious act upon the person or in the presence of any child under the age of seventeen, where there is an age difference of greater than two years between the two persons, with the intention of arousing or gratifying the sexual desires of either person, by the use of force, violence, duress, menace, psychological intimidation, threat of great bodily harm, or by the use of influence by virtue of a position of control or supervision over the juvenile. Lack of knowledge of the juvenile's age shall not be a defense.
Thus, the essential elements the prosecution must prove beyond a reasonable doubt for the crime of molestation of a juvenile are:
(1) accused was over the age of 17;
(2) accused committed a lewd or lascivious act upon the person or in the presence of a child under age 17;
(3) accused was more than two years older than the victim;
(4) accused had specific intent to arouse or gratify either the child's sexual desires or his or her own sexual desires; and
(5) accused committed the lewd or lascivious act by use of force, violence, duress, menace, psychological intimidation, threat of great bodily harm or by use of influence by virtue of position of control or supervision over juvenile.
See State v. Watson, 39,362 (La.App. 2 Cir. 4/20/05), 900 So.2d 325.

Insufficiency of the evidence to establish the identities of the victims.
Appellant contends that in the indictment, the children are identified only by gender and date of birth, not by name, in apparent compliance with the Victim's Rights Act. Appellant argues that the state failed to establish the birth dates of each victim in the videotaped statements and at trial in order to properly identify "which child was the alleged victim of each count, and thus, the evidence is insufficient for purposes of establishing the identity of the victim as to each count beyond a reasonable doubt."
In fact, the indictment lists the names and birth dates of each child along with the charges. Further, each child stated his or her name and age at trial. The age that each child voiced at trial matches the age that child should be in accordance with the birth date listed in the indictment. The evidence also shows each verdict sheet contained the corresponding victim's name. This argument is without merit.
Assignment of Error Number One: There was insufficient evidence introduced at trial to support a finding of guilty of Molestation of a Juvenile with regard to the female juvenile, JL, whose date of birth is April 11, 1988.
Houston argues that the testimony of JL showed that he only asked to perform oral sex on her and this did not constitute an "act upon the person of a juvenile." He further argues that the behavior described is not sufficient to qualify as an attempt of the crime since there was nothing done in furtherance of or in preparation of committing the lewd or lascivious act.
JL testified at trial that she was 16 years old and identified the appellant in *697 court. The videotape of the interview done at The Gingerbread House was played for the jury. The girl told the interviewer that she was at her grandmother's house alone with appellant and talking on the telephone with her boyfriend. She stated that Houston told her he would give her a cell phone if she would let him put his tongue on her "private part." She said she told him no, but he kept asking her if she "was going to do the deal."
After the tape was played, JL confirmed that what she stated in the interview was true. She further stated that while she was on the telephone with her boyfriend, appellant kept "picking up the phone" and eventually told her to get off the phone. She affirmed that appellant offered to give her a cell phone if she would let him perform oral sex on her.
We agree with appellant that the evidence fails to show that he actually committed a lewd or lascivious act on JL that constituted the crime of molestation of a juvenile. However, this evidence is sufficient to sustain a conviction for attempted molestation of a juvenile. An attempt requires both "specific intent to commit a crime" and an act or omission "for the purpose of and tending directly toward the accomplishing of his object." La. R.S. 14:27 A. Mere preparation to commit the crime is not sufficient to constitute an attempt. La. R.S. 14:27 B. On the other hand, a predatory act such as lying in wait with a dangerous weapon with the intent to commit a crime, or searching for the intended victim with a dangerous weapon with the intent to commit a crime shall be sufficient to show attempt to commit the offense. Id. In determining whether the action of a defendant is an attempt, the totality of the facts and circumstances presented by each case must be evaluated. State v. Williams, 490 So.2d 255, 261 (La. 1986). The overt act need not be the ultimate step toward or the last possible act in the consummation of the crime attempted. Id. It is the intent to commit the crime, not the possibility of success, that determines whether the act or omission (in furtherance of the crime) constitutes the crime of attempt. State v. Pappas, 446 So.2d 523, 524 (La.App. 4 Cir.1984).
There is no question that the appellant had specific intent to engage in the lewd and lascivious act evidenced through his request to perform oral sex on the victim. Important to our determination, however, is the coercive position occupied by the appellant and the predatory nature of his acts toward accomplishing the crime. See, e.g., State v. Smith, 94-388 (La.App. 3 Cir. 11/9/94), 645 So.2d 817 (J. Saunders dissenting: Coercive position of father asking his son to allow him to perform oral sex on him is tantamount to La. R.S. 14:27(B)  lying in wait or searching for intended victim with dangerous weapon as constituting an attempt to commit crime), writ granted, 94-3116 (La.6/2/95), 654 So.2d 1095, judgment reversed, 94-3116 (La.10/16/95), 661 So.2d 442.
As the step-grandfather of the child, the appellant was in a position of influence and supervision her. JL referred to him as "Papa," and she was alone in the home with him. In addition to making the request for oral sex upon the 14-year-old girl, he offered to give her a cellular telephone if she allowed him to do the act, and he maintained the pressure by continuing to ask if she was "going to do the deal." These predatory actions constitute more than mere preparation to commit the crime. They exhibit his intent to commit the crime and, given the totality of the circumstances, we find they constitute the crime of attempt. See State v. Smith, 94-3116 (La.10/16/95), 661 So.2d 442. (Held: Entering his son's room, lying on the bed, *698 and asking the child to sit on his chest so that he could perform oral sex on him constituted attempt to commit crime against nature. The Smith court distinguished these circumstances from those in State v. Baxley, 93-2159 (La.2/28/94), 633 So.2d 142, in which the court held that soliciting oral sex by asking an undercover police officer to perform oral sex for $20 is only preparatory and is not an overt act which would support a conviction for the attempt of the crime solicited. The court observed that the solicitation in Smith took place where the child was subject to the authority of the father and not free to leave, whereas in Baxley, the adult victim was free to walk away.)
When the evidence does not support a conviction of the crime charged, but supports a conviction on a lesser and included offense, this court is authorized to enter a judgment of guilty of the lesser and included offense. La. C. Cr. P. art. 821(E); State v. Maxie, 33,982 (La.App. 2 Cir. 11/1/00), 773 So.2d 198.[2] In this instance, we conclude that while the evidence is insufficient to sustain a conviction for molestation of a juvenile, viewing the evidence in the light most favorable to the prosecution, a rational factfinder could have found beyond a reasonable doubt that Houston had specific intent to commit molestation of the juvenile, JL, and engaged in an act tending directly toward accomplishing his goal.
Accordingly, we vacate and set aside the conviction for molestation of a juvenile in Count eight of the indictment, and render judgment of conviction for the statutorily responsive verdict of attempted molestation of a juvenile on this count. Appellant's sentence of 15 years is also vacated and set aside, and we remand to the trial court for resentencing on this lesser offense.
Assignment of Error Number Two: There was insufficient evidence introduced at trial to support a finding of guilty of Molestation of a Juvenile with regard to the male juvenile, DS, whose date of birth is July 6, 1992.
Houston contends that the testimony by DS at trial regarding what he witnessed his stepfather do with his two younger cousins and his sister is not consistent with the girls' testimony and their videotaped statements. Counsel argues that there is no independent evidence of the events allegedly witnessed by this child since his sister and cousins either denied or recanted the behavior he said he witnessed.
Appellant also argues that DS impeached his credibility. DS admitted that he had lied on the videotaped statement that he heard the appellant threaten to kill his sister, JL. He stated that he actually only overheard his aunt state that Houston told JL that he wanted to have oral sex with her. DS also stated at trial that he had seen "Papa" naked at the pool, but he had forgotten about the incident when asked during the videotape interview if he had ever seen the defendant's "private part." He stated that everything else he stated in the videotape is true.
*699 DS testified at trial that he was 12 years old. During the videotaped interview, DS stated that he had seen the appellant make his sister and two cousins "get on top of him." He said that this happened one day when he and the girls (whom he identified by name) were swimming with the appellant while the grandmother was at work. He said the girls had on bathing suits and that the appellant had on shorts. He said the appellant told the girls to pull their bathing suits to the side. The boy demonstrated with two bears to show the position of the acts he observed. He showed that one bear was sitting down and another bear was placed facing in and straddling the other bear. He said the girls tried to get down, but the defendant "held them tight." The boy testified near the end of the tape that he sat and watched, and stated that the appellant said, "I was jealous and uh and I wasn't jealous."
In her taped interview, KJ stated that one time she, DS, SA and the appellant were swimming while her older cousin was inside on the phone. She said that the appellant took "one leg of the panties off" and took "his stuff out." She demonstrated with bears how the appellant sat in a chair and had her on top of him. She stated that DS saw this happen.
When there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency. State v. Allen, supra. Although DS admitted that he had lied about actually hearing the appellant threaten his sister, DS's testimony in the videotape was detailed and his demonstration of the position of the appellant's body with those of the girls matched the position KS demonstrated, and she corroborated his testimony. Viewing the evidence in the light most favorable to the prosecution, a rational factfinder could have found beyond a reasonable doubt that defendant was guilty of every essential element of the crime of molestation of a juvenile.
Therefore, this assignment is without merit.
Assignment of Error Number Three: There was insufficient evidence introduced at trial to support a finding of guilty of Molestation of a Juvenile with regard to the female juvenile, TJ, whose date of birth is June 19, 1998.
Appellant contends that the testimony of TJ was unreliable because her out-of-court statement was vague and given in response to leading questions. At one point, TJ initially seems to deny on cross-examination that anything happened to her. Appellant contends that this should have raised sufficient doubt in the minds of the jurors.
TJ testified at trial that she was six years old and that her nickname was "Lan Lan." The videotape of The Gingerbread House interview was played and then she was questioned by the prosecutor. She nodded her head affirmatively when asked if everything she said on the video was true. She would not give a verbal response.
TJ nodded affirmatively when she was asked if she was afraid. She initially answered no when asked if something happened to her. When asked, "So what you said on the tape, that wasn't true, was it?" the child nodded no. Then she reversed herself and answered "yes" when the question was rephrased in the positive. When confronted with the contradiction, she shrugged her shoulders. The cross examination ends as follows:
Q Sometimes on the tape you said one thing, and sometimes on the tape you said something different, what's true?

*700 Ms. Wingate: Your honor, objection again, we need some clarification.
Ms. Andrepont: I'll rephrase the question.
Q Did you tell the truth through the whole time?
A Yes.
Q Did you say anything that wasn't true:
A Yes.
Q What did you say that wasn't true?
A I don't know.
Q You don't know.
Ms. Andrepont: Okay. I don't have any more questions, thank you.
The state on redirect examination asked:
Q. [T.J.], you're almost finished. You're almost finished, okay? I have one or two more questions.
[T.J.], you saw yourself on the videotape; is that right?
A. (Nodding head affirmatively.)
Q And is everything that you said in that videotape about papa touching you, is that true?
A Yes.
Q Yes?
A. (Nodding head affirmatively.)
Q Are you sure?
A (Nodding head affirmatively.)
A review of the videotape shows that at first this witness was very reluctant to answer the questions. When asked why she was there she whispered that her mother said Papa could not come to school. When first asked, she said nothing happened. When questioned again, she then said her mother told her she was not supposed to talk about anything. The interviewer said it was okay. The child put her fingers in her mouth. Eventually, she said that Papa kissed her and she pointed to her buttocks.
This child said that the appellant touched her "kitty" with his hands and "dug in there." She also demonstrated with bears how he moved when he put his "private" in her. The child also said that her sister had "sucked his kitty cat."
She said Papa was naked and that he put orange stuff on her "kitty" and "bootie." She said grandma was at work when this happened and that she had seen Papa "hunch" her grandma.
Although the child gave somewhat conflicting responses on cross and redirect, she ultimately stated that what she said about the appellant touching her was true. The jury must have believed this portion of the testimony. Viewing the evidence in the light most favorable to the prosecution, a rational factfinder could have found beyond a reasonable doubt that defendant was guilty of every essential element of the crime of molestation of a juvenile.
Therefore, this assignment is without merit.
Assignment of Error Number Four: There was insufficient evidence introduced at trial to support a finding of guilty of Molestation of a Juvenile with regard to the female juvenile, SA, whose date of birth is July 5, 1994.
Appellant contends that the evidence is insufficient to sustain this conviction for several reasons. Appellant contends that SA was hesitant during the taped interview at The Gingerbread House and answered only after encouragement from the interviewer. She denied that the appellant touched her genital area underneath her clothing.
SA testified at trial that she was 10 years old. She stated that the appellant felt her buttocks and she witnessed him attempt to take off KJ's swimsuit while she was lying on a raft in the pool. She also stated that the appellant touched her *701 "private parts" but did not put his hands under her clothes while doing it. As with the other witnesses, the state played the videotape of the interview at The Gingerbread House and then questioned the girl about its accuracy. The witness answered affirmatively when asked if everything she said on the tape was true.
At the beginning of the taped interview, SA was very hesitant to talk about what happened to her. However, she spoke of an incident where the appellant grabbed her but she said she kicked and he put her down. She hesitated again and the counselor asked the girl to mark on drawings of a naked body where she had been touched in a way she did not like. The girl marked the vaginal area on one and the buttocks area on another drawing. When asked who touched her there, the girl replied her grandmother's husband.
The videotape reveals that there was more than one incident of touching but that the appellant never touched her bare skin. She said that while she was watching TV, he would call her to come to him. She stated he would grab her and she would try to get away. She said that sometimes he picked her up and "start um feeling my butt." She indicated that these incidents happened when her grandmother was at work or nursing school.
The testimony from the medical expert who examined three of the victims shows that SA is the only one who had any signs of possible sexual abuse. Dr. Ann Springer testified that she examined this girl January 30, 2003, and there was evidence of fissures which indicated anal penetration. The doctor further opined that these would be "unusual injuries" if the victim was never touched except with clothes on.
The determination of whether or not "an act is lewd or lascivious depends upon the time, the place and all of the circumstances surrounding its commission, including the actual or implied intention of the actor." State v. Sturdivant, 27,680 (La.App. 2 Cir. 2/28/96), 669 So.2d 654. A lewd and lascivious act is one tending to excite lust in a sexually immoral context. State v. Holstead, 354 So.2d 493 (La.1977). The word "lewd" is identified with obscenity and community norms for morality. In State v. Stamper, 24,658 (La.App. 2 Cir. 3/31/93), 615 So.2d 1359, modified on other grounds, 624 So.2d 1208 (La.1993), the defendant was convicted of three counts of indecent behavior with a juvenile. One count involved an incident where the defendant rubbed the victim's buttocks and watched him shower for approximately 45 seconds. This court found that such conduct was sufficient to constitute a lewd and lascivious act.
When this child's testimony is viewed in its totality, the appellant's behavior raises an inference that he tried to sexually arouse himself and the victim by feeling her buttocks. The jury obviously believed that defendant's acts were lewd and lascivious. Viewing the evidence in the light most favorable to the prosecution, a rational factfinder could have found beyond a reasonable doubt that defendant was guilty of every essential element of the crime of molestation of a juvenile.
Therefore, this assignment is without merit.
Assignment of Error Number Five: There was insufficient evidence introduced at trial to support a finding of guilty of Molestation of a Juvenile with regard to the female juvenile, KJ, whose date of birth is June 28, 1995.
Appellant argues that the testimony of KJ should be disregarded since she was a "confused, impressionable child." KJ stated that the appellant had rubbed her private area over "100,000 times" and *702 put his "private part in my uh cootie hole." She stated that the appellant "put his thing in my thing," and did the same with TJ. However, Dr. Rodriquez testified that she examined both TJ and KJ on January 13, 2003, and both children had normal examinations. She found no tear in the hymen of either child. Finally, the child testified that the acts had not stopped even though she had not been back over to her grandmother's house. Appellant contends that he therefore cannot be the perpetrator.
KJ child testified at trial that she was nine years old. The prosecutor played the videotape made at The Gingerbread House. During the taped interview, when asked why she was there, the child replied it was because of "what Papa did." She then stated that he "touches my butt" and "licks my privates." She said he did this to her and her sister, TJ, whom she had identified earlier. KJ gave details about the appellant's behavior, stating that while he made her lick his "privates" he "turned me around and licked my privates." She described his penis as a "big hot dog" and said "it tastes likes it's nasty." This child also described an incident occurring at the pool where he took "his stuff" out and had her sit on him.
The prosecutor asked this witness if everything she said during that interview was true. The child replied yes. On cross-examination, the child testified as follows:
Q And you said you saw papa do something to [TJ]; is that right?
A Yes, ma'am.
Q What did he do?
A He put his thing in my thing.
Q What did he do to [TJ]?
A The same thing.
. . .
Q And you said on the tape that papa asked you to touch his privates?
A Yes, ma'am.
Q What did he say to you?
A Don't tell nobody.
The record does not unequivocally support the argument that the medical testimony contradicted the child's allegations. Dr. Jennifer Rodriguez was accepted as an expert. She testified that she had examined this witness and her sister on January 13, 2003, and that the examination of the vaginal and anal areas revealed a "normal" exam. She explained, however, that "80 per cent of the time, a child can have a normal exam with sexual abuse." She opined that by the time she had examined the child, "she healed and she was normal at the time I looked at her."
The child's perception about the number of times the appellant had molested her did not distract the jury from the details she gave regarding how he performed oral sex on her and her sister and "made her rub his cootie."
Viewing the evidence in the light most favorable to the prosecution, a rational factfinder could have found beyond a reasonable doubt that defendant was guilty of every essential element of the crime of molestation of a juvenile.
This assignment lacks merit.
Assignment of Error Number Six: The trial court erred in failing to grant appellant's Motion for Post Verdict Judgment of Acquittal.
By this assignment appellant contends that the trial court erred in denying the motion for post verdict judgment of acquittal on the basis that the evidence was insufficient to support the convictions.
As discussed above, the evidence is sufficient to support the convictions for counts four through seven. Thus, the trial court *703 did not err in denying this motion. The evidence does appear insufficient to support count eight. However, as noted earlier, this court has the authority to amend the conviction to attempted molestation of a juvenile. Accordingly, the appellant is not prejudiced by the error.
Assignment of Error Number Seven: The trial court erred in finding the videotaped statements of the five juveniles were competent and admissible and not in violation of Walter Houston's constitutional right to confront his accusers and the court further erred in permitting their introduction at the trial of this case.
By this assignment, appellant contends the children were asked leading questions and were not competent to testify, and thus, the appellant's right to confront his accusers was violated.
The statutory provisions regarding the admissibility of videotaped recordings are found in La. R.S. 15:440.3-15:440.5, which provide:
La. R.S. 15:440.3
The videotape authorized by this Subpart is hereby admissible in evidence as an exception to the hearsay rule.
La. R.S. 15:440.4.
A. A videotape of a protected person may be offered in evidence either for or against a defendant. To render such a videotape competent evidence, it must be satisfactorily proved:
(1) That such electronic recording was voluntarily made by the protected person.
(2) That no relative of the protected person was present in the room where the recording was made.
(3) That such recording was not made of answers to interrogatories calculated to lead the protected person to make any particular statement.
(4) That the recording is accurate, has not been altered, and reflects what the protected person said.
(5) That the taking of the protected person's statement was supervised by a physician, a social worker, a law enforcement officer, a licensed psychologist, a licensed professional counselor, or an authorized representative of the Department of Social Services.
B. The department shall develop and promulgate regulations on or before September 12, 1984, regarding training requirements and certification for department personnel designated in Paragraph (A)(5) of this Section who supervise the taking of the protected person's statement.
La. R.S. 15:440.5
A. The videotape of an oral statement of the protected person made before the proceeding begins may be admissible into evidence if:
(1) No attorney for either party was present when the statement was made;
(2) The recording is both visual and oral and is recorded on film or videotape or by other electronic means;
(3) The recording is accurate, has not been altered, and reflects what the witness or victim said;
(4) The statement was not made in response to questioning calculated to lead the protected person to make a particular statement;
(5) Every voice on the recording is identified;
(6) The person conducting or supervising the interview of the protected person in the recording is present at the proceeding and available to testify or be cross-examined by either party;
(7) The defendant or the attorney for the defendant is afforded an opportunity *704 to view the recording before it is offered into evidence; and
(8) The protected person is available to testify.
B. The admission into evidence of the videotape of a protected person as authorized herein shall not preclude the prosecution from calling the protected person as a witness or from taking the protected person's testimony outside of the courtroom as authorized in R.S. 15:283. Nothing in this Section shall be construed to prohibit the defendant's right of confrontation.
The state filed a notice of intent to introduce the videotaped testimony. The hearing began on March 24, 2004, and was continued on April 21, 2004. At this hearing, the defense objected to the use of the videotape on the grounds that the interviewer used leading questions during the session with the four-year-old. As an example of why the questions were leading, the defense stated that the child gave answers that were part of the questions and used this example: "Was he standing next to you or where was he?" The defense argued that the child's answer "standing next to me" is directly from the question asked. The trial court found that the questions asked by the interviewer were not leading and found the tapes to be admissible.
A review of the videotape shows that the child was asked questions about why she was there for an interview and if anything had happened to her. The explicit answers as well as much information given that did not originate with the interviewer show that this child was voluntarily testifying and was not misled or prompted to give responses. Thus, the trial court did not err in finding that the tapes were admissible.
The second argument regarding the right of the appellant to confront the witnesses also lacks merit. At trial, the defense did not object to the admissibility of the tapes and further, did not move to have the evidence contained in the tapes excluded as a result of not being able to effectively question the witnesses. Under the holding in State v. McClain, 04-98 (La.App. 5 Cir. 6/29/04), 877 So.2d 1135, writ denied, XXXX-XXXX (La.12/10/04), 888 So.2d 835, failure to assert the issue of the witness not being competent and responsive during the trial waives the right to present it on appeal.
Here the witnesses all testified and were cross examined somewhat aggressively. There is nothing to indicate that the appellant did not have a fair trial in which the children's credibility during the interviews was adequately presented to the jury.
Accordingly, this assignment is without merit.
Assignments of Error Number Eight: The trial court erred in failing to charge the jurors with the responsive verdicts of attempted molestation of a juvenile and attempted indecent behavior with a juvenile.
Assignments of Error Number Nine: The trial court erred in failing to include the responsive verdicts of attempted molestation of a juvenile and attempted indecent behavior with a juvenile on the verdict sheets submitted to the jury.
Assignments of Error Number Ten: Trial counsel was ineffective for failing to object to the trial court's failure to give the responsive verdicts of attempted molestation of a juvenile and attempted indecent behavior with a juvenile, both in its charges to the jury and on the verdict sheets.
By these assignments, the appellant alleges that the trial court erred in failing to instruct the jury of attempted molestation of a juvenile and attempted indecent behavior with a juvenile. Both of these responsive *705 verdicts were absent from the jury verdict forms as well. Appellant further contends that his trial counsel was ineffective for failing to object to the omissions.
The failure to object to the improper jury charge regarding responsive verdicts results in a waiver of the error on appeal. La. C. Cr. P. arts. 801 and 841; State v. Wallace, 602 So.2d 296 (La.App. 2 Cir.1992). The Louisiana Supreme Court has held that the issue of improper responsive verdicts must be raised by contemporaneous objection, and is not a patent error reviewable on the face of the pleadings. State v. Turner, 337 So.2d 1090 (La.1976) and State v. Craddock, 307 So.2d 342 (La. 1975). However, the failure can constitute ineffective assistance of counsel and reversible error if the appellant shows he was prejudiced by the omission. See State v. Wright, 598 So.2d 493 (La.App. 2 Cir. 4/08/92). In assessing prejudice in this situation, the basic question is whether there is a reasonable probability that, absent the error, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome of the trial. Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).
Generally, an ineffective assistance of counsel claim is properly raised in an application for post-conviction relief, filed initially in the trial court where a full evidentiary hearing can be conducted. State v. Sullivan, 596 So.2d 177, 183 (La. 1992); State v. Prudholm, 446 So.2d 729, 737 (La.1984). The claim may also be raised in a motion for new trial. State v. Hudson, 570 So.2d 504, 506 (La.App. 5 Cir.1990), writ denied, 580 So. 2d 920 (La. 1991). In addition, when ineffective assistance of counsel claims are raised on appeal by assignment of error and the record discloses sufficient evidence to rule on the merits of the claim, the appellate court may address the claim in the interest of judicial economy. State v. Bailey, 573 So.2d 610 (La.App. 2 Cir.1991); State v. Serio, 94-131 (La.App. 5 Cir. 7/01/94), 641 So.2d 604, writ denied 94-2025 (La.12/16/94), 648 So.2d 388, recons. denied, 94-2025 (La.3/17/95), 651 So.2d 261. Before the conviction can be reversed on this basis, however, defendant must demonstrate that the inclusion or exclusion of a responsive verdict was prejudicial and that fundamental due process has been violated. State v. Reese, 472 So.2d 76, 77-78 (La.App. 5 Cir.1985); State v. Williams, 632 So.2d 351, 359 (La.App. 1 Cir.1993).
In Wright, supra, the majority of members of the three-judge panel of this court reversed a conviction of one count of possession of an illegal firearm because defense counsel had failed to object when the trial judge omitted the responsive verdict of attempt to commit the crime charged and the jury verdict form listed only verdicts of guilty of possession and not guilty. We reasoned that a reversal would have been required if the trial judge had been asked and refused to give the attempt as a responsive verdict, and so we held that counsel's failure to object was so serious that he was not performing as the counsel guaranteed by the Sixth Amendment to the United States Constitution. The panel also found that the effect of the failure to object was prejudicial because there was a reasonable probability that the jury would have returned the responsive verdict of attempt on that count if the proper instruction had been given. State v. Wright, supra at 498. The court noted that the crime of attempted possession of an illegal firearm contained the same elements as the possession offense. However, the court also noted that the jury had returned a verdict on count two, which was attempted *706 possession of a stolen thing, even though the evidence supported a conviction of the completed offense. This fact assisted the court in reaching its conclusion that there was a reasonable probability that the jury would have returned a verdict of attempted possession of an illegal firearm, despite the substantial evidence to support the conviction of possession.
In State v. Serio, 94-131 (La.App. 5 Cir. 7/01/94), 641 So.2d 604, writ denied 94-2025 (La.12/16/94), 648 So.2d 388, recons. denied, 94-2025 (La.3/17/95), 651 So.2d 261, the defendant assigned as error a claim of ineffective assistance of counsel for failing to object to the trial court's failure to include the offense of attempt to promote prostitution in the jury charge. After reviewing the facts and evidence in this case, the court concluded that the omission did not prejudice defendant. Following the test in Strickland v. Washington, supra, the court found that fundamental due process was not violated because, given the evidence, it did not appear likely that the verdict would have been different had the responsive verdict of attempted promotion of prostitution been given. Hence, the court affirmed the conviction after concluding that reversal was not warranted.
In this instance, appellant contends that the verdict would have been different had the jury instructions and verdict forms included the responsive verdicts of attempted molestation of a juvenile and attempted indecent behavior with a juvenile. In support of this claim, the appellant notes that the jury returned not guilty verdicts on the three aggravated rape charges, and found the appellant guilty by 10-2 vote on the five molestation charges. The jury also returned to the courtroom during deliberations for clarification of the instructions on the five molestation charges. Appellant contends that the verdicts were obviously a compromise, supporting the finding that this was a close case, and had it been provided with an alternative, the jury would have returned a lesser verdict to some or all of the charges for which he was convicted. Finally, the appellant urges that the evidence was insufficient to convict him on the molestation charges.
We have already reviewed the sufficiency of evidence as to each guilty verdict, finding the evidence as to Count eight could only support a verdict of attempted molestation of a juvenile. We have amended that conviction to the lesser offense and remand for re-sentencing on that conviction.
While we have determined that the evidence is sufficient to support the convictions on the remaining four counts of molestation of a juvenile, this alone does not necessarily mean that the outcome of the trial would not have been different had the responsive verdicts been included in the jury charge and verdict forms. "An attempt is a separate but lesser grade of the intended crime; and any person may be convicted of an attempt to commit a crime, although it appears on the trial that the crime intended or attempted was actually perpetrated by such person in pursuance of such attempt." La. R.S. 14:27(C). (Emphasis added.).
We observe, however, that the jury charge and verdict form included the responsive verdicts of indecent behavior with juveniles, a crime that carries a maximum penalty of seven years  approximately half the maximum penalty of 15 years provided for molestation of a juvenile. The maximum punishment for attempted molestation of a juvenile is half the maximum for the completed offense, which in this case is almost the same maximum as the lesser offense of indecent behavior with *707 juveniles that was in the jury charge and listed on the verdict form.
We agree with the appellant that this verdict appears to be an obvious compromise verdict. However the compromise among many of the jurors may well have been an agreement to vote to acquit on the rape charges in exchange for an agreement to convict on all of the molestation charges rather than the lesser offense of indecent behavior with juveniles or render a not guilty verdict on one or more charges. It is possible that it was a defense strategy to give the jury few alternative verdicts.
Based on the record before us, we cannot reach the conclusion that the defendant was prejudiced by the failure of his counsel to object to those jury instructions. The jury could have returned a verdict of indecent behavior with juveniles or not guilty verdicts. Instead ten members of the jury elected to vote guilty on the molestation of a juvenile on all five charges, even though the evidence was insufficient to support the conviction on Count eight. Our amendment of that verdict has rendered that error harmless.
Accordingly, this assignment is without merit.
Assignment of Error Number Eleven: The trial court erred in finding Walter Houston to be a third felony offender.
Appellant argues that the state failed to show that he was advised of and understood his rights when he entered a guilty plea to issuing worthless checks over $100 but less than $500. Noting that the defense counsel specifically alleged that the minute entry did not list the specific rights of which the appellant had been advised, he argues that the state failed to meet its burden when it failed to produce a transcript of the taking of the plea.
The habitual offender provisions are found in La. R.S. 15:529.1, which reads in pertinent part:
A. (1) Any person who, after having been convicted within this state of a felony . . . thereafter commits any subsequent felony within this state, upon conviction of said felony, shall be punished as follows:
. . .
(b) If the third felony is such that upon a first conviction, the offender would be punishable by imprisonment for any term less than his natural life then:
(i) The person shall be sentenced to imprisonment for a determinate term not less than two-thirds of the longest possible sentence for the conviction and not more than twice the longest possible sentence prescribed for a first conviction; or
(ii) If the third felony and the two prior felonies are felonies defined as a crime of violence under R.S. 14:2(13), a sex offense as defined in R.S. 15:540 et seq. when the victim is under the age of eighteen at the time of commission of the offense, or as a violation of the Uniform Controlled Dangerous Substances Law punishable by imprisonment for ten years or more, or any other crimes punishable by imprisonment for twelve years or more, or any combination of such crimes, the person shall be imprisoned for the remainder of his natural life, without benefit of parole, probation, or suspension of sentence.
This record shows that the state filed a bill of information alleging that the appellant was a fourth felony offender. The three prior offenses listed were a 1985 simple escape, a 1990 simple burglary, and a 1996 issuing worthless checks. The defense filed a motion to quash the use of any of the prior convictions based on guilty pleas because the appellant had not been *708 advised of his rights and "mere recitation of rights waived by a defendant pleading guilty does not always insure the intelligent and voluntary nature of a guilty plea."
At the habitual offender hearing, the state moved to "abandon" the prior "simple escape" conviction and the defense counsel withdrew her objection to the simple burglary conviction.
The state's fingerprint expert confirmed that the fingerprints on both bills belonged to the appellant. The state then offered into evidence a certified copy of the minute entry showing that the appellant was represented by counsel and had been advised of his Boykin rights when he entered the plea to the issuing of worthless checks.
The defense did not offer anything into evidence and presented no witnesses. Under the rationale found in State v. Shelton, 621 So.2d 769 (La.1993), the state met its burden when it showed that the appellant was the same person who entered the guilty plea and that he was represented by counsel during that proceeding. That court explained:
If the defendant denies the allegations of the bill of information, the burden is on the State to prove the existence of the prior guilty pleas and that defendant was represented by counsel when they were taken. If the State meets this burden, the defendant has the burden to produce some affirmative evidence showing an infringement of his rights or a procedural irregularity in the taking of the plea.
Under the shifting burden scheme found in State v. Shelton, supra, this record is clear the appellant did not show there was any infringement of his rights or a procedural irregularity in the taking of the prior pleas. Thus, the burden never shifted back to the state to prove the constitutionality of the pleas.
The facts in this case, where there was no objection to the entry of the minute entry and no further evidence produced by the defense, is similar to the facts in State v. O'Neal, 34,814 (La.App. 2 Cir. 10/21/01), 795 So.2d 1292. In that decision we stated:
We find that the state, through the use of the minute entry, has met its burden of proof under Shelton by showing that the defendant was represented by counsel at the time of the plea. Once the state has met its burden of proof, the burden shifts to the defendant to produce some affirmative evidence showing an infringement of his rights or a procedural irregularity. The defendant alleges that there were defects in the taking of the plea. However, the defendant did not introduce any evidence to show an infringement or irregularity. Therefore, the defendant has not met his burden of proof under Shelton.

Thus, under State v. O'Neal, supra and the rationale in State v. Shelton, supra, the trial court did not err in upholding the validity of the prior pleas and finding this appellant to be a third felony offender.
This assignment of error lacks merit.
Assignment of Error Number Twelve: The trial court erred in sentencing Walter Houston to excessive sentences on each count.
Appellant argues that the 15-year sentences imposed on the four remaining counts of molestation of a juvenile should not be upheld because the trial court gave no justification for the maximum sentences. He further argues that his prior record is for offenses not in the "same crime family" and that it has been several years since his previous convictions.
In reviewing claims of excessive sentence, an appellate court uses a two-step *709 process. First, the record must show that the trial court took cognizance of the criteria set forth in La. C. Cr. P. art. 894.1. The articulation of the factual basis for a sentence is the goal of Article 894.1, not a rigid or mechanical compliance with its provisions. Where the record clearly shows an adequate factual basis for the sentence imposed, remand is unnecessary even where there has not been full compliance with La. C. Cr. P. art. 894.1. State v. Lanclos, 419 So.2d 475 (La.1982). The important elements which should be considered are the defendant's personal history (age, family ties, marital status, health, employment record), prior criminal record, seriousness of offense and the likelihood of rehabilitation. State v. Jones, 398 So.2d 1049 (La.1981); State v. Bradford, 29,519 (La.App. 2 Cir. 4/2/97), 691 So.2d 864.
In selecting a proper sentence, a trial judge is not limited to considering only a defendant's prior convictions but may properly review all prior criminal activity. State v. Jackson, 612 So.2d 993 (La.App. 2 Cir.1993). The sources of information relied upon by the sentencing court may include evidence usually excluded from the courtroom at the trial of guilt or innocence, e.g., hearsay and arrests, as well as conviction records. State v. Myles, 94-0217 (La.6/3/94), 638 So.2d 218. These matters may be considered even in the absence of proof that defendant committed the other offenses. State v. Jones, 31,569 (La.App. 2 Cir. 12/9/98), 724 So.2d 810; State v. Anderson, 30,060 (La.App. 2 Cir. 10/29/97), 702 So.2d 40, 42.
There is no requirement that specific matters be given any particular weight at sentencing. State v. Jones, 33,111 (La. App. 2 Cir. 3/1/00), 754 So.2d 392, 394, writ denied, XXXX-XXXX (La.2/2/01), 783 So.2d 385.
Second, whether the sentence imposed is too severe depends on the circumstances of the case and the background of the defendant. A sentence violates La. Const. art. 1, § 20 if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering. State v. Dorthey, 623 So.2d 1276 (La.1993); State v. Bonanno, 384 So.2d 355 (La.1980). A sentence is considered grossly disproportionate if, when the crime and punishment are viewed in light of the harm done to society, it shocks the sense of justice. State v. Hogan, 480 So.2d 288 (La.1985); State v. Bradford, supra.
As a general rule, maximum sentences are appropriate in cases involving the most serious violation of the offense and the worst type of offender. State v. Grissom, 29,718 (La.App. 2 Cir. 8/20/97), 700 So.2d 541; State v. Walker, 573 So.2d 631 (La. App. 2 Cir.1991).
This record shows that the trial court stated it had reviewed this appellant's criminal history and referred to 13 convictions including a 1969 incident "which included a kidnaping and molestation." The other factors mentioned by the trial court were the seriousness of the crimes, the appellant's age and the likelihood that the appellant would commit the crimes again. The court then ordered that the appellant serve 24 years for the count that was enhanced by the multiple offender status, and 15 years at hard labor for the remaining four counts which were not subject to enhancement.
No PSI was ordered and this record does not contain any evidence regarding all of the multiple convictions referenced. However, there is no mandate to request a PSI under the provisions of La. C. Cr. P. art. 875 and the use of hearsay evidence is allowable.
In this instance, the trial court noted that a review of the appellant's criminal *710 history "reveals that he has at least 29 arrests" and 13 convictions. The source of the information is unknown. There is nothing to indicate that he was given any notice that the court was going to use this information or that the appellant was given an opportunity to "speak in mitigation." On the other hand, this appellant has neither contested the use nor the validity of the trial court's statement regarding the prior arrests and convictions. In his reply brief, appellant only objects to the state's allegation that this step-grandfather systematically molested all of the children.
We conclude that, except for the sentence for Count eight now amended to attempted molestation of a juvenile, the record supports the trial court's justification for these maximum sentences. The sentences will be served concurrently with the 24-year sentence. Hence, the actual impact of the length of these sentences does not shock the sense of justice.
As to count seven, the evidence shows that this 10-year-old victim observed the offender molest his sister and at least one cousin on one occasion. Although the victim suffered no physical harm, the psychological impact of this crime on the individual can be far-reaching with a potential impact on his own behavior in the future. A maximum sentence for this offense does not appear disproportionate to the severity of the appellant's behavior.
As to the other two young victims, the sentences do not appear to be too harsh nor do they shock or sense of justice. These girls testified to numerous incidents of molestation by this offender.
Accordingly, this assignment is without merit.

Conclusion
For the reasons stated above, appellant's convictions and sentences for the molestation of the juveniles, KJ, TJ, SA, and DS, named in Counts four through seven of the indictment are affirmed. We amend appellant's conviction on Count eight from molestation of the juvenile, JL, to the lesser offense of attempted molestation of the juvenile, JL, and we remand to the trial court for resentencing on this conviction.
AFFIRMED IN PART; AMENDED IN PART AND REMANDED FOR RESENTENCING.
NOTES
[1] La. C. Cr. P. art. 493.2 permits joinder of offenses that require hard labor sentences with those in which a hard labor sentence is optional in a single indictment when the offenses are of the same or similar character or are based on two or more acts constituting part of a common plan or scheme. Cases so joined must be tried by a jury of twelve, ten of whom must concur to render a verdict.
[2] The jury verdict form does not list attempted molestation of a juvenile as a responsive verdict to the indictment charge of molestation of a juvenile, and defendant did not request the instruction nor object to its absence, which constitutes a waiver of same. This is not error patent. State v. Serio, 94-131 (La. App. 5 Cir. 7/01/94), 641 So.2d 604. Appellant raises the issue of the incorrect jury instructions and jury verdict form along with the claim of ineffective assistance of counsel in assignments of error eight, nine and ten, discussed infra.