Judgment rendered March 4, 2020.
Application for rehearing may be filed
within the delay allowed by Art. 922,
La. C. Cr. P.

No. 53,193-KA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

STATE OF LOUISIANA                          Appellee

Versus

ORLANDUS BATHDOMUS
MARCELIUS PRUDE                             Appellant

* * * * *

Appealed from the
First Judicial District Court for the
Parish of Caddo, Louisiana
Trial Court No. 350,647

Honorable Katherine Clark Dorroh, Judge

* * * * *

LOUISIANA APPELLATE PROJECT          Counsel for Appellant
By: Holli Ann Herrle-Castillo

JAMES E. STEWART, SR.                Counsel for Appellee
District Attorney

JASON WAYNE WALTMAN
NANCY F. BERGER-SCHNEIDER
CHARLES KENNETH PARR
Assistant District Attorneys

* * * * *

Before COX, STEPHENS, and THOMPSON, JJ.

**STEPHENS, J.**

This criminal appeal by Orlandus Bathdomus Marcelius Prude arises from the First Judicial District Court, Caddo Parish, Louisiana, where a jury found him guilty as charged of aggravated burglary and simple robbery. Prude was subsequently adjudicated a second-felony habitual offender. For the simple robbery conviction, Prude was sentenced to serve five years at hard labor, and for the aggravated burglary conviction, he was sentenced under the habitual offender law to serve 30 years at hard labor, without benefit of probation, parole, or suspension of sentence. Prude now appeals his convictions and sentences. For the following reasons, we affirm his conviction and sentence for simple robbery; however, we reverse the conviction and sentence for aggravated burglary. We enter the responsive verdict of unauthorized entry of an inhabited dwelling and remand the matter for further proceedings.

**FACTS**

Sometime after 10:00 p.m. on June 22, 2017, officers of the Caddo Parish Sheriff's Office ("CPSO") responded to a 911 call regarding a claim of a home invasion at 3145 Edson Street in Shreveport. The homeowner, Christina Taylor, informed the officers that her ex-boyfriend, Orlandus Prude, suddenly appeared in her bedroom and attacked her and her friend, Jataurus Jamison. According to Taylor, Prude then took their cell phones, grabbed a liquor bottle he found in her house, and smashed a window of Jamison's vehicle with it before driving away.

Ultimately, Prude was arrested and charged with aggravated burglary, in violation of La. R.S. 14:60, and simple robbery, in violation of La. R.S.

14:65. A jury trial in this matter began October 23, 2018, with the presentation of the following testimony and evidence.

Christina Taylor, one of Prude's victims, was the first to testify. She and Prude met in high school, dated on and off for a number of years, and had a seven-year-old son together. Prude lived with her and their son at the Edson Street house for a few months from late 2016 to February 2017, when Taylor demanded he move out. However, Prude still came to her house to watch their son while she worked. About two weeks before the June 22, 2017, incident, Taylor and Prude broke up and she began seeing Jamison.

On June 22, 2017, Taylor had a flat tire and called Prude looking for the spare tire for her pickup truck. When she got no response, she called Prude's mother and then his sister, looking for Prude and the spare tire and was told the tire might be at his mother's house across town. Taylor then decided to simply buy a tire. Taylor's uncle and Jamison came to help, and ultimately Taylor's father put the new tire on the truck. Taylor then "went to [Prude's] mama's house and then home." Taylor did not elaborate as to why she went to Prude's mother's house, or what she did there; she was not asked to explain.

Taylor testified that when Prude later returned her call, she told him she had only been looking for her spare tire and he was no longer needed. Taylor refused Prude's request to come over to Taylor's house to see their son. Taylor told him they did fine without him, hung up, and did not answer when Prude called again.

That night, Jamison arrived at Taylor's house between 9:00 and 9:30 p.m. Taylor's son was asleep on the couch; she took a shower. Taylor and Jamison had been in the bedroom a short time when they heard a knock,

followed by the sound of a door coming down. Taylor approached the bedroom door and asked, "Who is it?" A man answered "It's me," and Taylor testified she recognized Prude's voice. As Prude pushed the bedroom door open, she pushed it back. Prude pushed the door again, entered the bedroom, and Taylor stated he began repeatedly hitting her in the face with his fist. To escape Prude's blows, Taylor described ducking into the bedroom closet, at which point Prude turned and began punching Jamison in the head. Taylor came out and tried to stop Prude, who began to hit her again. Taylor testified she informed Prude of her intention to call the police, and Prude took Taylor's cell phone from her hand and crushed it. According to Taylor, Prude also took Jamison's cell phone, recalling Prude placed it in his pocket. She then saw another man she knew as Eric Pitts, standing in the hallway. Taylor said Prude told Pitts to "go get the gun" but she never saw Pitts get one.

As Prude left the house, he grabbed an empty liquor bottle Taylor had left by her front door; Prude used the bottle to smash Jamison's car window. Prude and Pitts drove away, and Jamison followed in his vehicle. Taylor stated Jamison returned about 30-45 minutes later.

Taylor called 911 from a neighbor's house. She suffered a black eye, a busted nose, and a busted lip, and she later noticed blood coming from her ear. She was treated by paramedics and released.

Taylor testified that after the incident she believed Prude had taken her wallet because she could not find it. Taylor testified that when she was in the closet, Prude was going through her bag, and said to "give it up, give me everything you got." Taylor described how they tussled over the purse a little bit, leading to her belief he had taken it. However, she found her wallet

3

under the bed the next day. Thus, Taylor testified nothing other than the two phones and the liquor bottle were taken from her home.

According to Taylor, her "rickety" front door had a working deadbolt but was only held up by a nail at the top, and Prude "maybe could have just pushed it hard, but I would say he kicked it in, okay, because that's how it sounded." Taylor testified all she could hear was the door tearing down and she was frightened. Taylor testified there was damage to the front door frame where the hinges attached, and the frame had to be replaced.

Jataurus Jamison also testified at trial, and his testimony largely supported Taylor's. According to Jamison, he had met Taylor only about two weeks before the incident. Jamison described Taylor's front door as not being secured to the frame; it had to be locked to keep it closed. When Jamison arrived at Taylor's residence, her son was asleep on the couch, and Jamison went straight to Taylor's bedroom, while Taylor took a shower. About 20-30 minutes later, Jamison testified Taylor had finished her shower and was drying off with a towel when they heard a noise. The bedroom door began opening, and Taylor pushed it closed. The door opened again and Taylor flew backward as a man burst into the room. Jamison described the man hitting Taylor in the face with his closed fist, multiple times, then turn and begin hitting Jamison in the head. According to Jamison, the man took Taylor's and Jamison's cell phones. Another man stood in the hallway. Jamison did not know either one of the intruders.

After the intruders left, Jamison dressed and went outside to find that one of the windows of his vehicle was smashed. An empty tequila bottle that had been in Taylor's house was now in the backseat. Jamison drove to his cousin's house to use the phone, because Prude had taken his. He threw

4

the empty bottle in a dumpster. Jamison recalled returning to Taylor's house 20-30 minutes later.

According to Jamison, as a result of Prude's attack he suffered two "bumps" on his forehead and one behind his ear. Jamison was treated by paramedics and released, although he continued to experience lightheadedness while at work for a week or two after the incident. Jamison did not hear anyone mention a gun during the incident.

Corporal Dennis Williams and Detective Matthew Lucky, of the CPSO, testified that Taylor's nose was swollen, Jamison had a knot on his forehead, and both had some blood on them and appeared shaken. Taylor's son was asleep on the couch when officers arrived—apparently, he slept through the entire incident.

Corporal Williams testified the front door of the home had been removed from the hinges. Further inspection of the door indicated it did not appear to have been on the hinges for a while. Corporal Williams thought the door appeared to have been "thrown," and noticed there was some damage, of an indeterminate age, to the strike plate at the bottom of the door. The rear driver's side window of a vehicle parked in the driveway was shattered and its interior was covered in glass. Corporal Williams also observed that the bedroom was in disarray, and it appeared that there had been a struggle.

The officers confirmed at trial Jamison told them he disposed of a liquor bottle he found in the back seat of his vehicle into a dumpster by an apartment building off Grimmet Drive, about 8-10 miles away from Taylor's residence. The officers also confirmed Taylor told them the bottle came

5

from her house.  Officers were able to retrieve a bottle matching the description that Taylor and Jamison gave them from the dumpster.

Detective Lucky testified that Prude and Pitts were identified as the intruders.  Pitts was located and interviewed on June 28, 2017, and Prude was located and interviewed on July 5, 2017.  Detective Lucky testified that in his interview, Prude indicated he had previously been living with Taylor, off and on, but was not living there at the time of the incident.  Prude initially told Det. Lucky he entered Taylor's home using a key, but later stated he lifted the door up and pushed it in.  The state questioned Det. Lucky about Prude's knowledge of who was in the house.

> State: Did the defendant, during your interview with him, indicate that he knew that there was someone else at Ms. Taylor's residence?
>
> Det. Lucky:  There would have been a point that he knew that there was somebody at that residence.  There was another vehicle in that yard that did not belong to Ms. Christina.
>
> State:  During your interview with the defendant, did he indicate what his state of mind was when he entered Ms. Taylor's residence?
>
> Det. Lucky:  The only thing that he told me as far as going over to Ms. Christina's residence, that he was going over there to get a tire, that he was wanting a tire from a vehicle – from previous conversation between him and her earlier on about her having a flat tire, pulling into that address and seeing another vehicle there. Like stated, he forced his way into the house originally saying that he was going there for a tire, but when he made it to the back bedroom, I mean, a fight transpired between them.
>
> Prosecutor:  Did he indicate that he was angry?
>
> Det. Lucky:  Did not indicate . . . that he was angry.

Prude initially told Det. Lucky no one was with him when he entered the house, but later admitted that Pitts rode with Prude to Taylor's house. Detective Lucky testified that Prude admitted to striking both Taylor and

Jamison, taking and smashing their cell phones and using the liquor bottle he found in Taylor's house to smash Jamison's vehicle window.

Prude's audio-recorded interview was introduced into evidence and played for the jury. In that interview, Prude informed Det. Lucky that Taylor called him about a flat tire and she got his spare tire from his mother's house. Prude stated that when he arrived at Taylor's house, he saw a vehicle that did not belong to Taylor and so he knew someone else was at her house. Prude stated he found Taylor in the bedroom with another man and he hit them both. Prude admitted he got upset when he saw Taylor with someone because he thought they were supposed to be working on their relationship. According to Prude, Taylor told him that she was not "messing around with anyone." Prude admitted he took their cell phones from the bedroom dresser and broke them on the ground. Then he took a liquor bottle from inside the house and used it to smash the window of the car outside.

Detective Lucky testified that, based upon his interviews with Taylor and Jamison, he prepared and obtained two warrants for Prude's arrest—one for aggravated burglary and one for simple robbery. In the affidavits to support the arrest warrants, Det. Lucky stated, "Christina advised Orlandus told her to give him everything she has, and he took her purse, wallet, and two cell phones." Detective Lucky testified prior to his interviews with Pitts and Prude, he contacted Taylor a second time, and she never mentioned the purse or wallet. During the officer's interview with Prude, Det. Lucky was still under the impression those items had been taken, and, to his knowledge at trial, that property had never been located. Detective Lucky testified Taylor never contacted him to advise she had located those items.

7

John Anderson, a crime scene investigator for CPSO, testified that the front door was off its hinges and leaning against the doorframe. Officer Anderson identified in court the photographs he took at the scene. Several photos related to Prude's entry into Taylor's house and the condition of the front door as a result. Other photos were of the liquor bottle and/or Jamison's vehicle. Finally, other photos reflected the condition of the victims and the room where they were attacked. Additionally, Ofc. Anderson testified no viable fingerprints were obtained from the liquor bottle recovered from the dumpster. The bottle matched the description of the bottle Taylor and Jamison said was at Taylor's home and Jamison said he found in his back seat and deposited in the dumpster.

Lee Scott, an investigator with the Caddo Parish District Attorney's Office, testified he served a subpoena on Pitts to appear and testify in court, but Pitts failed to appear during the trial. The state rested. After the trial court reviewed Prude's right to testify and remain silent, Prude exercised his right to remain silent. The defense rested.

The jury found Prude guilty as charged on both counts. He subsequently filed a motion for post-verdict judgment of acquittal and appeared for argument on his motion, which was denied by the trial court. Prude waived all sentencing delays, and the trial court proceeded with the sentencing hearing. After the hearing, the trial court sentenced Prude to serve 15 years at hard labor for the aggravated burglary conviction and 5 years at hard labor for the simple robbery conviction. The trial court ordered that the sentences run concurrently and that the minutes reflect that both offenses were designated as crimes of violence. Prude was given credit for time served. Prude was also ordered to pay court costs and $50.00 to the

8

Indigent Defender Board.  On November 18, 2018, Prude filed a motion to reconsider sentence, which was ultimately denied.

On February 28, 2019, the state charged Prude as a second-felony habitual offender.[1]  After considering evidence at the habitual offender hearing, the trial court determined the state had proved beyond a reasonable doubt that Prude was a second-felony habitual offender, and Prude appeared for resentencing on May 1, 2019.  The trial court noted the applicable sentencing range and reminded Prude of the time delays to file a motion to reconsider sentence, a motion for appeal, and for post-conviction relief.  The trial court also noted it adopted the aggravating and mitigating considerations previously articulated for sentencing.  Prude's original sentence was vacated, and he was resentenced to serve 30 years at hard labor, without benefit of probation, parole, or suspension of sentence.  The trial court ordered the sentence to run concurrent with Prude's sentence for simple robbery.

Prude filed a timely motion to appeal his convictions and sentences, which was granted.[2]  This appeal ensued.

## DISCUSSION

*Sufficiency of the Evidence*

In Prude's first assignment of error, he submits that the state failed to present evidence sufficient to uphold the conviction of aggravated burglary.

---

[1] The bill asserted that Prude had a prior conviction in which he pled guilty, on December 19, 2013, to simple robbery in the First Judicial District Court, Caddo Parish, in Docket No. 317,311.  Prude was sentenced to serve three years at hard labor.

[2] Louisiana C. Cr. P. art. 914 allows a motion for appeal to be filed within 30 days of the judgment *or* ruling on a motion to reconsider sentence.  Prude's motion for appeal was filed on May 1, 2019, within 30 days of the trial court's ruling on his motion to reconsider sentence, which was on May 9, 2019.

9

Specifically, the State failed to present sufficient evidence Prude intended to commit a felony or theft when he entered the house. Prude maintains a conviction for aggravated burglary requires proof beyond a reasonable doubt he entered Taylor's house with the specific intent, at the moment of entry, to commit a felony or theft therein. It is Prude's position there was no evidence he had the requisite specific intent, at the moment he entered Taylor's house. Prude argues that even after he moved out of Taylor's house, he continued to go there every day to watch their son while Taylor worked. According to Prude, the couple had just broken up two weeks before; he did not know that Taylor was seeing someone; and he did not know who owned the car outside Taylor's house. While acknowledging that a simple battery, a misdemeanor, did occur once he was inside the house and found the couple, Prude argues this was insufficient to prove he had intent to commit a felony or theft of the cell phones at the moment he entered the house, as would be required to convict him for aggravated burglary. We agree.

In opposition to Prude's assignment of error, the state maintains Prude intended to commit theft because he intended to and did take Taylor's tire from her house; however, that argument does not comport with the evidence at trial. Taylor testified that nothing but the cell phones and liquor bottle were taken from her home. Also, Prude's statement to police was it was his intent to retrieve *his* tire from Taylor's house. There was no testimony or evidence that suggested Prude intended to steal Taylor's tire from her house.

The state also maintains that Prude intended to commit an unspecified felony, because Prude was upset at seeing Jamison's vehicle at Taylor's house; thus Prude intended to harm Jamison. The state's second argument is

10

based on the contention that Prude became extraordinarily angry after Taylor's rejection and seeing an unknown vehicle outside her house that night. The state argues Prude instantly decided to enter the house, uninvited and unarmed, to cause serious bodily injury on Taylor and anyone else he found inside. The state asserts Prude's intent to commit more than just misdemeanor simple battery was demonstrated first by his entry into the home, which the state contends was done by forcefully kicking the door in and causing the lone remaining screw to fall to the floor. The state also contends Prude's repeated closed-fist punches to Taylor and Jamison also demonstrated his intent was more than just simple battery—he intended the level of harm that constitutes serious bodily injury. Finally, the state notes Prude's rage was further demonstrated when he grabbed the empty liquor bottle and used it to smash Jamison's car window before he left the scene.

*Applicable Law*

The proper test for determining a claim of insufficiency of evidence in a criminal case is whether, on the entire record, a rational trier of fact could find the defendant guilty beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979). A reviewing court must consider whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Jackson v. Virginia, supra*; *State v. Tate*, 2001-1658 (La. 5/20/03), 851 So. 2d 921, *cert. denied*, 541 U.S. 905, 124 S. Ct. 1604, 158 L. Ed. 2d 248 (2004); *State v. Crossley*, 48,149 (La. App. 2 Cir. 6/26/13), 117 So. 3d 585, *writ denied,* 2013-1798 (La. 2/14/14), 132 So. 3d 410.

11

The reviewing court does not assess the credibility of witnesses or reweigh evidence and accords great deference to the trier of fact's decisions to accept or reject witness testimony in whole or in part. *State v. Lensey*, 50,242 (La. App. 2 Cir. 11/18/15), 182 So. 3d 1059, *writ denied*, 2015-2344 (La. 3/14/16), 189 So. 3d 1066. Where there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency. *State v. Glover*, 47,311 (La. App. 2 Cir. 10/10/12), 106 So. 3d 129, *writ denied*, 2012-2667 (La. 5/24/13), 116 So. 3d 659.

The *Jackson* standard is applicable in cases involving both direct and circumstantial evidence. *State v. Henry*, 47,323 (La. App. 2 Cir. 7/25/12), 103 So. 3d 424, *writ denied*, 2012-1917 (La. 3/8/13), 109 So. 3d 356; *State v. Hill*, 47,568 (La. App. 2 Cir. 9/26/12), 106 So. 3d 617. The facts established by the direct evidence and inferred from the circumstances established by that evidence must be sufficient for a rational trier of fact to conclude beyond a reasonable doubt that the defendant was guilty of every essential element of the crime. *Id*.

Aggravated burglary is defined by La. R.S. 14:60, which provides:

[A]ggravated burglary is the unauthorized entering of any inhabited dwelling, or of any structure, water craft, or movable, where a person is present, with the intent to commit a felony or any theft therein, under any of the following circumstances:

(1) If the offender is armed with a dangerous weapon.

(2) If, after entering, the offender arms himself with a dangerous weapon.

(3) If the offender commits a battery upon any person while in such place, or in entering or leaving such place.

12

In this case, the existence of an aggravating factor is not in dispute because Prude admitted to committing a simple battery upon Taylor and Jamison. Therefore, the issues in this case turn on whether Prude specifically intended to commit an act that constituted a felony or a theft, and whether this specific intent existed at the moment that he entered the house. Our close review of this case necessitates a conclusion that the state failed to prove Prude's specific intent to commit a felony or theft at the moment he entered Taylor's house.

Specific intent is a state of mind that exists when the circumstances indicate the offender actively desired the prescribed criminal consequences to follow from his acts or omissions. La. R.S. 14:10(1). Specific intent is a state of mind and need not be proven as a fact, but may be inferred from the circumstances of the transaction and the actions of the defendant. *State v. Graham*, 420 So. 2d 1126 (La.1982); *State v. Scott*, 41,690 (La. App. 2 Cir. 1/24/07), 948 So. 2d 1159, 1162. However, the Reporter's Comment—1950 to La. R.S. 14:60 notes that the intent necessary for a conviction of aggravated burglary must rise to a certain level to be sufficient:

> The intent necessary must be the intent to commit a felony or any theft in order for the crime to be aggravated burglary. Thus, if a [person] **would enter a house with the intent to commit a crime which is not a felony or theft he could not be prosecuted under this section**. (Emphasis added).

Therefore, as it relates to aggravated burglary, the intent to commit a theft or felony must exist at the moment of entry. *State v. Scott, supra, citing State v. Ortiz,* 1996-1609 (La. 10/21/97), 701 So. 2d 922, *cert. denied*, 524 U.S. 943, 118 S. Ct. 2352, 141 L. Ed. 2d 722 (1998). It was incumbent on the state to prove beyond a reasonable doubt that Prude made an

13

unauthorized entry into an inhabited dwelling, and acted with specific intent, *at the moment of entry*, to commit an act that constituted a felony or any theft. *See State v. Ortiz*, *supra* at 932, *citing, State v. Lockhart*, 438 So. 2d 1089 (La. 1983). Here, the facts do not support a finding of Prude's specific intent, nor do the circumstances of the transaction and Prude's actions support the inference of such a finding. *See State v. Graham, supra.* Thus, the state failed to meet its burden of proof.

In *State v. Scott, supra*, this court concluded it was "constrained" to find the evidence did not satisfy every element of aggravated burglary because the state failed to prove the element of felonious intent. Although Scott: entered the house unauthorized (using violent force and causing significant damage to the front doors); committed simple battery (a misdemeanor) on one of the occupants; and, drove away in his victim's vehicle, this court was compelled to conclude that, *at the moment of entry*, there was no showing that Scott had specific intent to commit a felony or any theft therein. *Id*.

As emphasized by the *Scott* court, we identify two significant elements regarding the specific intent required for aggravated burglary: (1) Prude had to have the specific intent at the moment he entered the house, not later—*i.e.*, not when he entered the bedroom; and, (2) Prude had to specifically intend to commit an act that constituted a felony—not the specific intent to commit a misdemeanor—or theft. There is no dispute that Prude entered the house unauthorized as the doorway evidence indicates and Taylor testified. Further, there is no dispute Prude committed a battery—he admitted this in his statement. However, there was no evidence presented at

trial that Prude intended to commit a felony or theft—required elements of an aggravated burglary—at *the moment* he entered the house unauthorized.

Notably, a "felony" is defined as any crime for which an offender may be sentenced to death or imprisonment at hard labor. La. R.S. 14:2(A)(4). The potential list of intended felonies that would apply given the facts of this case are limited by the fact that Prude was not armed with a dangerous weapon when he entered the house. Simple battery and criminal damage to property are misdemeanors and would not support a conviction for aggravated burglary. However, second degree battery and aggravated criminal damage to property are felonies, but the state failed to prove Prude's intent to commit either of these felonies at the time he entered the house.[3]

The state argues that Prude was "just that angry," when Taylor refused to let him come over and then he saw an unknown car outside her house. However, there was only speculation about what fueled his anger: Prude and Taylor had just broken up two weeks before; he still helped care for their son; he may have thought her calling about her spare tire was for something more; he assumed the unknown car belonged to another man inside the house. Prude admitted seeing another car at the house, but stated he did not know to whom it belonged, and the officer testified Prude was not angry during his statement. While Prude was forthcoming about beating Taylor

---

[3] Second degree battery is a battery when the offender intentionally inflicts serious bodily injury, which the statute further defines as bodily injury which involves unconsciousness, extreme physical pain or protracted and obvious disfigurement, or protracted loss or impairment of the function of a bodily member, organ, or mental faculty, or a substantial risk of death. La. R.S. 14:34.1(B)(3); *State v. Pike*, 18-538 (La. App. 5 Cir. 5/8/19), 273 So. 3d 488, 502. Further, unauthorized entry, even if it arguably results in felony grade criminal property damage, is a distinct element from felonious intent. *See, Scott, supra* at 1163.

and Jamison once he realized there was another man in Taylor's bed, there is no evidence that ***at the moment Prude entered the house***, he had specific intent to cause injuries constituting serious bodily injury to Taylor and anyone else he found inside. Notably, in this case Prude was not armed with a dangerous weapon, nor was there evidence Prude had a violent history with Taylor or Taylor had ever been a victim of Prude's temper. Absent such evidence of felonious intent, the evidence here was insufficient to support aggravated battery. The facts of this case clearly suggest Prude could have been more appropriately charged with unauthorized entry, or some other offense that did not turn on specific intent to commit a battery that constituted a felony.

Regarding theft, Prude's statement to law enforcement was that he intended to get his tire back. Although the state argues that Prude's intent was to take Taylor's tire, there was no evidence or testimony explicitly related to the tire's ownership. Taylor testified that nothing was taken from her home except the cell phones and the liquor bottle. As to the cell phones, the testimony at trial indicates while Prude was hitting Taylor, she indicated she was calling the police; resultantly, he grabbed both Taylor's phone and Jamison's. Thus, his action in taking the phones was a reaction to Taylor's assertion when he was already in the house. As to the liquor bottle, Taylor's testimony was the empty bottle was near the doorway, and Prude took it as he left—a spontaneous gesture. Thus, despite taking the cell phones and liquor bottle during the incident, there was no evidence or reason to infer that Prude intended to commit a theft from the moment he entered Taylor's residence.

We conclude the evidence in this record demonstrates that Prude entered the house unauthorized but without specific intent at the moment he entered the house to commit an act that constituted a felony or theft; therefore, his conviction for aggravated burglary must be reversed. We further find, however, the evidence will support a conviction of a lesser included responsive offense—unauthorized entry of an inhabited dwelling, which is "the intentional entry by a person without authorization into any inhabited dwelling or other structure belonging to another and used in whole or in part as a home or place of abode by a person." La. R.S. 14:62.3(A). That offense is responsive to the offense of aggravated burglary. La. C.C.P. 814A(48). Therefore, pursuant to La. C. Cr. P. art. 821(E), we enter a judgment of guilty of that offense. See, *State v. Scott*, *supra*; *State v. Houston*, 40,642 (La. App. 2 Cir. 3/10/06), 925 So. 2d 690, *writ denied*, 2006-0796 (La. 10/13/06), 939 So. 2d 373.

*Sentencing*

In his second assignment of error, Prude submits the 30-year sentence imposed under the habitual offender law for the conviction of aggravated burglary is excessive. He argues the trial court failed to consider any mitigating factors, specifically stating there were none, when in fact trial counsel listed several in the motion to reconsider sentence. However, considering the reversal of the conviction for aggravated burglary, we pretermit any deliberation of that assignment of error.

## CONCLUSION

For the foregoing reasons, we affirm Orlando Bathdomus Marcelius Prude's conviction and sentence for simple robbery. However, we reverse his conviction and sentence for aggravated burglary, enter the responsive

17

verdict of unauthorized entry of an inhabited dwelling, and render a

judgment convicting Prude of that offense.  The matter is remanded for

sentencing pursuant to this opinion.

**AFFIRMED IN PART; REVERSED IN PART; JUDGMENT ENTERED AND RENDERED FOR CONVICTION OF UNAUTHORIZED ENTRY OF AN INHABITED DWELLING; REMANDED FOR FURTHER PROCEEDINGS.**